St. Paul Fire and Marine Insurance Co. ("St. Paul") filed a complaint seeking a declaration regarding its duty to defend and indemnify Clarence Elliott in two lawsuits arising out of an automobile accident involving a taxicab owned and operated by Elliott. The trial court held that St. Paul did owe a duty to defend and indemnify Elliott, notwithstanding St. Paul's attempt *Page 761 
to cancel the insurance policy issued to Elliott. St. Paul appealed.
Elliott purchased a commercial automobile liability insurance policy through Meriwether Insurance Agency ("Meriwether"). Meriwether placed the insurance through the Alabama Assigned Risk Pool. St. Paul, a participant in the risk pool, issued Elliott a liability policy affording coverage of $10,000 per person; $20,000 per accident for bodily injury; and $5,000 per accident for property damage.
Meriwether arranged for Elliott's premium charged by St. Paul to be financed by Capitol Premium Plan, Inc. ("Capitol"). In the finance agreement, Elliott agreed to give an irrevocable power of attorney to Capitol that provided:
 "[Elliott] Agrees in the event of a default in payment of any installment or any delinquency and collection charge due hereunder . . . Capitol may cancel the policies covered hereby after adequate notice has been given to the insured as required by state law."
The finance agreement further provided:
 "[Elliott] Agrees that any payments received by Capitol subsequent to the expiration of any notice of intended cancellation, will only be accepted for credit to the undersigned's account and shall not constitute reinstatement or obligate Capitol to withold [sic] cancellation of any insurance policy."
Elliott failed to make the premium payments required to keep the insurance policy in force. As a result, on December 12, 1984, Capitol mailed Elliott a notice of its intent to cancel his insurance policy after ten days if his payment was not received before expiration of that time. Elliott did not make the required payment, and on January 1, 1985, Capitol mailed a letter requesting that St. Paul cancel Elliott's insurance policy effective January 3, 1985.
St. Paul mailed a notice of cancellation to Elliott on February 5, 1985, and a copy to Meriwether, which was received by Meriwether on February 11, 1985. Elliott acknowledged receiving the notice.
Thereafter, Elliott paid Meriwether two months' premiums, which Meriwether forwarded to Capitol. Capitol responded by stating that the payments were insufficient to reinstate the insurance coverage, as provided in the finance agreement, and applied the payments to Elliott's delinquent account.
On March 28, 1985, Elliott was transporting Lucinda Allen and Susie Lewis, as paying passengers in his taxicab, when his taxicab was involved in an accident in which Lucinda Allen was injured and Susie Lewis was killed. Allen and Flanders Daniel (the administratrix of Lewis's estate) filed suits against Elliott, which are pending final resolution of this case.
Ordinance 95-D of the City of Eutaw, Alabama, which was in force at the time St. Paul issued Elliott the insurance policy, provides that an insurer of a taxicab operator must give 30 days' notice to the chief of police before the insurer can effectively cancel the policy. Ordinance 95-D further provides that a taxicab operator must file with the chief of police a liability insurance policy and proof of payment of 12 months' premium in order to obtain a license to operate a taxicab in the City of Eutaw.
Elliott did not file, nor did the city clerk require the filing of, an insurance policy and proof that the premium for 12 months had been paid. Rather, the city clerk issued Elliott a license based on his presentation of a receipt showing the payment of one month's premium. Neither St. Paul nor Capitol gave a 30-day notice of cancellation to the chief of police as required by ordinance 95-D.
St. Paul did not receive notice of the accident or of the suits against Elliott until August 18, 1986, when Meriwether forwarded to St. Paul a demand letter that was sent by counsel for the estate of Lewis. Upon St. Paul's review of the records from the suit by the Lewis estate, it discovered the existence of the suit by Allen.
St. Paul filed this action on October 1, 1986, seeking a declaration by the trial court that it did not have a duty to defend or indemnify Elliott in the two suits arising out of the March 28, 1985, accident. St. Paul also sought an injunction to prevent *Page 762 
further prosecution of the suits by Allen and by Daniel as Lewis's personal representative.
The trial court held that St. Paul had a duty to defend Elliott, and that St. Paul's liability to indemnify Elliott was increased to $20,000 per person and $40,000 per accident for bodily injury by operation of Ala. Code 1975, § 32-7-6 (cum. supp. 1988). The trial court granted the injunction as requested by St. Paul and extended it while this case was appealed.
St. Paul first argues that the non-compliance with ordinance 95-D by the City of Eutaw renders the ordinance inapplicable to St. Paul. We disagree. Ordinance 95-D provides in part:
 "The Chief of Police shall examine into the qualifications and fitness of any person who may file an application to drive a taxicab . . . in the City so that the safety and comfort of the general public shall not be endangered by the operation of such taxicabs. . . . Each person, firm, or corporation engaged in the City in the business of operating taxicabs for hire shall, before commencing operation and before the issuance of any permit or license therefor, file with the Chief of Police to be approved by the Chief of Police a policy of liability insurance issued by an insurance company qualified to do business in the State of Alabama to which is attached a receipt showing or disclosing the payment in full of a twelve-month (12) premium on said policy. Said policy of insurance shall provide minimum liability coverage for each taxicab operated in the following amounts: (1) for liability for bodily injury, TEN THOUSAND AND NO/100ths DOLLARS ($10,000.00) for each person and TWENTY THOUSAND AND NO/100ths DOLLARS ($20,000.00) for each accident; (2) for property damage, FIVE THOUSAND AND NO/100ths DOLLARS ($5,000.00) for each accident. No such policy filed and approved as herein provided may be cancelled by the issuing insurance company except upon and after thirty (30) days' notice in writing to the Chief of Police and upon such notice being given by such company any permit or license issued to the person, firm, corporation, or other party filing such insurance policy shall be revoked unless a new insurance policy as herein provided shall be filed with the Chief of Police before the date upon which the cancellation thereof becomes effective."
The ordinance provides that a license to drive a taxicab will be issued only after the applicant supplies the city with evidence of liability insurance. In this case, it accepted as proof of coverage less than was required by the ordinance when it issued a license to Elliott without proof of payment of 12 months' premium. Because the city waived this requirement and accepted less evidence of coverage, St. Paul argues that it was free to ignore the notice requirement contained in the ordinance. St. Paul's argument seems to be that the city is estopped to enforce that part of the ordinance requiring it to give notice of cancellation of a policy on a city-licensed taxicab, since the city did not require strict compliance with the ordinance by the applicant for a taxicab license.
The purpose and intent of ordinance 95-D is to insure the citizens of Eutaw against tortious conduct of taxicab operators. In an effort to further this objective, ordinance 95-D requires an insurer of a taxicab operator to give 30 days' notice before cancellation of a liability policy. The ordinance placed a duty on St. Paul to notify the chief of police before cancellation. This duty is not dependent upon the City's requiring strict compliance with the ordinance by the applicant for a license. They are independent provisions, and the insurer can not ignore the ordinance, notwithstanding the city clerk's verifying insurance coverage without proof of payment of 12 months' premium.
Statutes intended for the public benefit are to be construed most favorably to the public. Gant v. Warr, 286 Ala. 387,240 So.2d 353 (1970). The same rules used to construe statutes are used in construing ordinances. City of Birmingham v. StacyWilliams Co., 356 So.2d 608 (Ala. 1978). St. Paul had an independent duty to give *Page 763 
the chief of police a 30-day notice in order effectively to cancel Elliott's insurance policy.
St. Paul next argues that if coverage is found notwithstanding its attempt to cancel Elliott's policy, such coverage was lost because, St. Paul says, Elliott failed to give St. Paul adequate notice of the accident and the suits filed subsequent thereto, as required by the terms of the policy.
The language of the policy regarding notice reads as follows:
 "You must promptly notify us or our agent of any accident or loss. . . . Immediately send us copies of any notice or legal papers received in connection with the accident or loss."
Such language has been construed to mean that notice must be given within a reasonable time in view of all the facts and circumstances of the case. See generally, Annot., 18 A.L.R.2d 443, 448 (1951). There are only two factors to be considered in determining the reasonableness of a delay in giving notice of a loss or suit to an insurer: the length of the delay and the reasons for it. Southern Guaranty Insurance Co. v. Thomas,334 So.2d 879 (Ala. 1976).
The trial court found that Elliott's failure to provide notice was reasonable under the facts and circumstances of this case. Elliott was unaware that he was still an insured under St. Paul's policy, because St. Paul had issued a notice of cancellation to Elliott and Meriwether. Elliott is illiterate; however, he testified at trial that upon inquiry into the status of his insurance after the accident, Betty McCaa at Meriwether informed him that his insurance coverage with St. Paul had been cancelled and thus created in him the belief that there was no need to notify St. Paul of the loss or suits arising therefrom.
This is not to hold that Meriwether was an agent of St. Paul. Rather, Betty McCaa was merely interpreting for Elliott the notice, which created a belief on Elliott's part that he was no longer covered by the St. Paul policy, as intended by the notice.
Under these circumstances, it would be unjust to hold in favor of St. Paul, because it substantially contributed to Elliott's belief that he had no coverage under the St. Paul policy. See Southern Guaranty Insurance Co. v. Thomas, supra.
St. Paul argues that because its policy issued to Elliott is in force only by operation of ordinance 95-D, its liability should not exceed the requirements of the ordinance, i.e., coverages of $10,000, $20,000, and $5,000. This argument must fail in light of Act 84-301, Alabama Acts 1984, now codified at Code 1975, § 32-7-6 (cum. supp. 1988), which increased the minimum limits of liability insurance coverage in Alabama from $10,000 per person and $20,000 per accident for bodily injury to $20,000 per person and $40,000 per accident. The trial judge properly substituted the limits of liability set out in ordinance 95-D for the limits set forth in § 32-7-6 (cum. supp. 1988). When possible, conflicting statutes should be reconciled so as to form one harmonious plan. Sparks v. CalhounCounty, 415 So.2d 1104 (Ala.Civ.App. 1982).
The trial court's judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.