Securities America, Inc. ("SAI"), a defendant in an action pending in the Jefferson Circuit Court, appeals from the trial court's order denying its motion to compel arbitration of the claims made against it by the plaintiffs. We affirm.
 I.
SAI is a securities broker-dealer registered with the United States Securities and Exchange Commission and is a member of the National Association of Securities Dealers. SAI offers securities to the public through a nationwide network of *Page 1254 
registered representatives. SAI is registered under the laws of Alabama to offer and sell securities.
The 10 plaintiffs — Charles P. Rogers, Margaret Rogers, M. Khris McAlister, Robert F. McCullough, William S. Ringland, Adrian Ringland, Jr., Adrian Ringland III, Bertha Ringland, George Edwards, and John Taliaferro — allege that "[t]his is a case about the criminal actions of a con artist . . . who assumed his college roommate's identity and stole over $1 million from the ten individual plaintiffs." Brief of Appellees, at 4. That alleged "con artist" is Scott Wolas, who, using the name of Allen Lee Hengst, his college roommate, became a registered representative of SAI, opened a branch office in Orlando, Florida, and obtained an Alabama securities license under that assumed name.
The plaintiffs allege that acting "[o]n behalf of SAI and in violation of the Alabama Securities Act, Wolas (masquerading [as] Allen Hengst) enticed each of [them] into investing in securities approved and supported by SAI." Brief of Appellees, at 6. Further, they allege that they "lost substantial amounts of [money] as a result of the negligent, wanton and fraudulent acts of Wolas and SAI." Brief of Appellees, at 7.
SAI contends that "[p]laintiffs' claims stem solely from alleged losses arising from their dealings in bogus gold certificates with [Wolas, masquerading as Hengst], a registered representative of . . . SAI." Brief of Appellant, at 7. Further, SAI states that, "unbeknownst to [it], [Wolas, masquerading as Hengst,] had been operating a Ponzi scheme[1] selling `gold certificates' prior to his affiliation with . . . SAI and apparently continued to do so after he became registered with the firm." Brief of Appellant, at 9.
Five of the plaintiffs — M. Khris McAlister, Robert F. McCullough, Charles P. Rogers, Margaret Rogers, and William S. Ringland (the "nonsignatory plaintiffs") — never opened an account with SAI and, therefore, never signed any agreement with SAI. On the other hand, the other five plaintiffs — Adrian Ringland, Jr., Adrian Ringland III, Bertha Ringland, George Edwards, and John Taliaferro (the "signatory plaintiffs") — opened brokerage accounts with SAI, signing and receiving documents concerning those accounts. The documents were presented to the signatory plaintiffs by Wolas, who signed the documents as SAI's registered representative, using the name "Allen Hengst."
Each signatory plaintiff signed a new account application, which contains the following language directly above the client-signature line:
 "I HEREBY ACKNOWLEDGE THAT I AM IN RECEIPT AND HAVE READ, UNDERSTOOD AND AGREED TO THE TERMS SET FORTH IN THE SAI CLIENT AGREEMENT AND THAT THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT WHICH I HAVE READ AND UNDERSTAND."
(Capitalization in original.) Additionally, George Edwards and John Taliaferro opened retirement accounts with SAI, signing applications that contain the following language directly above the customer-signature line: *Page 1255 
 "I REPRESENT THAT I HAVE READ THE CUSTOMER AGREEMENT GOVERNING THIS ACCOUNT AND AGREE TO BE BOUND BY SUCH CUSTOMER AGREEMENT AS CURRENTLY IN EFFECT AND AS MAY BE AMENDED FROM TIME TO TIME. THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT. . . . I ACKNOWLEDGE RECEIPT OF THE PRE-DISPUTE ARBITRATION AGREEMENT."
(Capitalization in original.)
All the signatory plaintiffs established their accounts as option accounts, which required them to execute option-account agreements. Those agreements contain the following language directly above the customer-signature line:
 "I REPRESENT THAT I HAVE READ THE TERMS AND CONDITIONS GOVERNING THIS ACCOUNT AND AGREE TO BE BOUND BY SUCH TERMS AND CONDITIONS AS CURRENTLY IN EFFECT AND AS MAY BE AMENDED FROM TIME TO TIME. THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT. . . . I ACKNOWLEDGE RECEIPT OF THE PRE-DISPUTE ARBITRATION AGREEMENT."
(Capitalization in original.)
The predispute arbitration agreement contained in the SAI customer agreement, which agreement is referenced in the separate agreements executed by all the signatory plaintiffs, provides in pertinent part:
 "I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON, OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BEFORE A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC., OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., AS I MAY DESIGNATE."
(Capitalization in original.)
 II.
On October 19, 2001, the plaintiffs sued SAI and Wolas, alleging that the "action arises out of [their] financial investments . . . made through SAI's agent, principal and employee — the so-called `Allen Lee Hengst' — the most recent alias of Scott J. McKay Wolas." Seeking both compensatory and punitive damages, the complaint asserted claims of fraudulent misrepresentation and deceit; fraudulent suppression and concealment; negligent or wanton hiring, training, and supervision; breach of fiduciary duty; violation of § 8-6-17, Ala. Code 1975; and violation of §§ 8-6-3 and -4, Ala. Code 1975.
On December 13, 2001, SAI answered the complaint. It asserted as a defense that "[p]laintiffs' claims are subject to mandatory arbitration agreements." On that same date, SAI filed a motion to dismiss, or, alternatively, to stay the proceedings and compel arbitration. SAI attached to that motion the affidavit of Kevin Zemann, its director of regional supervision, to which were attached copies of those documents signed and/or received by the signatory plaintiffs.
On December 19, 2001, SAI filed a brief in support of its motion to compel arbitration. The brief was accompanied by the affidavit of Lamar S. Jones, SAI's vice *Page 1256 
president and chief operations officer. That affidavit described the interstate nature of SAI's business, as well as the interstate aspects of a sale-of-securities transaction.
On January 30, 2002, the plaintiffs filed a brief in opposition to SAI's motion to compel arbitration. On February 1, 2002, the trial court denied SAI's motion. SAI appealed.
 III.
This Court recently reiterated the standard of review of a denial of a motion to compel arbitration:
 "`This Court reviews the denial of a motion to compel arbitration de novo. Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala. 1999). The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999); Sisters of the Visitation v. Cochran, 775 So.2d 759 (Ala. 2000). "[A]fter a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (opinion on application for rehearing) (Ala. 1995).'"
SouthTrust Bank v. Ford, 835 So.2d 990, 993 (Ala. 2002) (quoting AmericanGen. Fin., Inc. v. Morton, 812 So.2d 282, 284 (Ala. 2001)).
As previously discussed, the signatory plaintiffs had entered into written agreements with SAI, while the nonsignatory plaintiffs had not. Therefore, the controlling principles must be applied separately to each group of plaintiffs.
 IV.
The trial court refused to compel the nonsignatory plaintiffs to arbitrate their claims against SAI. On appeal, SAI argues that although "[t]he non-signatory plaintiffs are complete strangers to [it]," they "should be required to arbitrate their claims just like any other SAI `customer.'" Brief of Appellant, at 30. SAI's argument has no merit.
SAI, as the party seeking to compel arbitration, had the initial burden of proving the existence of a contract calling for arbitration of the claims of the nonsignatory plaintiffs. That threshold burden is imposed upon the party seeking to compel arbitration because "`"a party cannot be required to submit to arbitration any dispute he has not agreed to submit."'" Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524, 526 (Ala. 2001) (quoting Old Republic Ins. Co. v. Lanier, 644 So.2d 1258, 1260
(Ala. 1994), quoting in turn A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 362 (Ala. 1990)). SAI provided no evidence of any contract by which any nonsignatory plaintiff agreed to submit any dispute to arbitration.
SAI argues that the nonsignatory plaintiffs should be compelled to arbitrate their disputes, because, SAI alleges, "the non-signatory plaintiffs are attempting to avail themselves of the benefits of [the SAI customer agreement]." Brief of Appellant, at 31. The nonsignatory plaintiffs respond that their claims are not based upon SAI's customer agreement and that they "do not allege breach of contract." Brief of Appellees, at 27. Our review of the complaint indicates that the plaintiffs are not attempting "to enforce selectively the provisions of . . . SAI's customer agreement," as alleged by SAI. Brief of Appellant, at *Page 1257 
31. Without addressing the legal merits, if any, of SAI's argument, we conclude that the argument must fail, because of a total absence of factual support.
The trial court did not err in refusing to compel the arbitration of the claims of the nonsignatory plaintiffs. Therefore, to that extent, its order denying SAI's motion to compel arbitration must be affirmed.
 V.
When SAI moved to compel arbitration of their claims, the signatory plaintiffs did not dispute the existence of contracts calling for arbitration, which contracts evidence transactions substantially affecting interstate commerce. Therefore, the burden shifted to the signatory plaintiffs to present evidence indicating that the arbitration agreements are not valid or that they do not apply to the disputes in question. While the signatory plaintiffs did not dispute the applicability of the agreements, they did contend that the agreements are not valid or enforceable.
In Alabama Catalog Sales v. Harris, 794 So.2d 312, 315 (Ala. 2000), "[t]he ultimate issue . . . [was] whether the trial court, or an arbitrator, determines the validity of a contract that contains a provision requiring that all claims arising therefrom be arbitrated." (Footnote omitted.) This Court held that "the trial court, as opposed to the arbitrator, must decide the ultimate question relating to the legality and enforceability of the contracts." 794 So.2d at 317. Thus, it was appropriate for the trial court, as it is for this Court, to address the enforceability by SAI of the SAI customer agreements.
The parties agree that SAI and its registered representatives are subject to the Alabama Securities Act, codified at § 8-6-1 et seq., Ala. Code 1975 ("the Act"). The purpose of the Act is to protect the public from fraudulent, dishonest, or unethical practices in the securities business. See Comment to § 8-6-3, Ala. Code 1975. "Statutes intended for the public benefit are to be construed most favorably to the public. Gant v. Warr, 286 Ala. 387, 240 So.2d 353
(1970)." St. Paul Fire Marine Ins. Co. v. Elliott, 545 So.2d 760,762 (Ala. 1989).
The Act requires that every person engaged in the business of effecting transactions in securities in Alabama be registered with the Alabama Securities Commission ("the Commission"). See, generally, § 8-6-3. Specifically, § 8-6-3(a) provides: "It is unlawful for any person to transact business in this state as a dealer or agent for securities unless he is registered under this article. It is unlawful for any dealer or issuer to employ an agent unless the agent is registered."[2] There is no evidence indicating that Scott Wolas was registered to sell securities in Alabama. Instead, it is undisputed that, because of Wolas's dishonesty, the Commission registered Allen Hengst, who had no knowledge that Wolas had assumed his identity for that purpose. Therefore, we must conclude that Wolas and SAI violated § 8-6-3(a).
The signatory plaintiffs argue that the SAI customer agreements containing the arbitration provision cannot be enforced, because, they argue, the Act "prohibits enforcement of contracts made in violation of its provisions." Brief of Appellees, at 9. SAI responds that the Act "offers no impediment to the enforcement of the arbitration agreements," because "SAI *Page 1258 
did not know that [Wolas, masquerading as Hengst,] was anyone other than who he purported to be." Reply Brief of Appellant, at 5. Our analysis of § 8-6-19(g), Ala. Code 1975, resolves this issue in favor of the signatory plaintiffs.
Section 8-6-19(g) provides, in pertinent part:
 "(g) No person who has made or engaged in the performance of any contract in violation of any provision of this article . . . or who has acquired any purported right under such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any action on the contract."
(Emphasis added.)
As previously stated, we must construe this statute most favorably to the public, including the signatory plaintiffs. Therefore, we read it as stating, in relevant part, that "no person who has made or engaged in the performance of any contract in violation of any provision of the Act may base any action on the contract." Therefore, SAI is not entitled to enforce the arbitration provision in its customer agreements.
As previously discussed, SAI contends that it is entitled to enforce the arbitration agreements because it had no knowledge of any violation of the Act. SAI's argument is based on the knowledge requirement in § 8-6-19(g), emphasized in our quotation of that provision. SAI would have us construe the statute to mean, in relevant part, that "no person who has made or engaged in the performance of any contract in violation of any provision of the Act, with knowledge of the facts by reason of which its making or performance was in violation, may base any action on the contract." However, not only does such a construction fail to construe the statute in favor of the public, it also fails to consider another relevant rule of statutory construction.
In White v. Knight, 424 So.2d 566, 567-68 (Ala. 1982), this Court discussed the "doctrine of last antecedent":
 "[P]laintiff argues that the language [of the Code section] is ambiguous, and being so dictates the use of the `doctrine of last antecedent' in discovering its meaning:
 "`By what is known as the doctrine of the "last antecedent," relative and qualifying words, phrases, and clauses, are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote; . . .'
citing 82 C.J.S. Statutes § 334 (1953).
 "We appreciate the application of this general rule of statutory construction; however, we also note from the cited section that the doctrine is only an aid to construction and `will not be adhered to where extension to a more remote antecedent is clearly required by a consideration of the entire act. . . . Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all.' Ibid. See also 2A Sutherland Statutory Construction § 47.33 (Sands 4th ed. 1973)."
The antecedent immediately preceding the phrase containing the knowledge requirement is a "person . . . who has acquired any purported right under any . . . contract [in violation of any provision of the Act]." Construing the statute in favor of the public, we see no reason to apply the knowledge requirement to the more remote antecedent, that is, to a "person who has made or engaged in the performance of any contract in violation of any provision of [the Act]."
The violations of the Alabama Securities Act rendered the SAI customer *Page 1259 
agreements unenforceable by SAI. Therefore, SAI is not entitled to seek arbitration under the provisions of those agreements, and the trial court did not err in denying SAI's motion to compel the signatory plaintiffs to arbitrate their claims.
 VI.
For the reasons stated above, the order of the trial court is affirmed.
AFFIRMED.
Houston, Lyons, Brown, Johnstone, and Stuart, JJ., concur.
Moore, C.J., concurs in the result.
Harwood, J., recuses himself.
[1] "The term `ponzi scheme' refers to an investment scheme whereby returns to investors are financed, not through the success of an underlying business venture, but from the principal sums of newly attracted investors. . . . Initial investors are actually paid the promised returns, attracting additional investors." In re Primeline Sec.Corp., 295 F.3d 1100, 1104 n. 2 (10th Cir. 2002).
[2] The Act defines "agent" as "[a]ny individual other than a dealer who represents a dealer or issuer in effecting or attempting to effect sales of securities. . . ." § 8-6-2(2), Ala. Code 1975.