Micah McCOMAS, Appellant,

v.

Heather KIRN, Appellee.

No. S–11089.

Supreme Court of Alaska.

Jan. 28, 2005.

Micah E. McComas, pro se, Greenville, South Carolina.

Heather McCoy, pro se, Anchorage.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Heather Kirn petitioned for a long-term domestic violence protective order against her ex-husband, Micah McComas. The superior court granted Kirn's request on September 10, 2002. McComas now appeals the order, arguing that the superior court's findings of fact and conclusions of law were erroneous. We affirm, because we conclude that the superior court did not clearly err in finding that McComas had committed a crime involving domestic violence against Kirn, that the actions that supported the order were not too remote in time, and that the order was not barred by denial of an earlier request for a protective order.

## II. FACTS AND PROCEEDINGS

Heather Kirn and Micah McComas married in 1998. Their son was born three months later. In 1999 McComas was arrest-ed and incarcerated on theft-related charges. The parties separated soon after the arrest, and in September 2000 Kirn filed for divorce.

McComas was paroled to the Akeela House (a substance abuse treatment center) on October 1, 2000. A few days later, McComas left the Akeela House against court orders. On October 9 he went to Kirn's workplace to discuss the divorce. The police were summoned and McComas fled to their son's day care. When the child's caretaker informed him that Kirn's mother had his son, McComas drove to his mother-in-law's home and demanded to see his child. After his mother-in-law denied his request, he broke two windows in her vehicle. Kirn petitioned for ex parte and long-term protective orders that day. The district court granted Kirn's request for an ex parte protective order and consolidated the domestic violence case with the parties' pending divorce case. That same night, October 9, McComas was arrested and incarcerated for having left the Akeela House and for criminal mischief.

The divorce hearing was held on October 25, 2000. Superior Court Judge Stephanie Joannides entered a decree of divorce on December 15, 2000, *nunc pro tunc* to October 25, 2000. The divorce decree dissolved the protective order but ordered McComas not to telephone or otherwise contact Kirn directly. The decree awarded primary physical custody and sole legal custody of the parties' son to Kirn. McComas was still incarcerated when the decree was entered.

On July 23, 2002, one week before McComas was to be released from custody, Kirn again petitioned the court for ex parte and long-term protective orders against McComas. Superior Court Judge Sharon Gleason issued an ex parte protective order that day and scheduled a hearing on Kirn's request for a long-term protective order for August 7. McComas was released on July 31, but was rearrested the next day for violating the conditions of his parole by failing a drug test. Because McComas could not attend the August 7 hearing, the superior court rescheduled the hearing for September 10. It also issued an order extending the ex parte protective order and denying McComas visitation with his son. McComas attended the

September 10, 2002 hearing. Superior Court Judge William F. Morse conducted the hearing, granted Kirn's request for a long-term protective order, and reinstated supervised visitation per the existing order issued in the divorce proceeding. McComas appeals.[1]

## III. DISCUSSION

### A. Standard of Review

■ We review the factual findings supporting issuance of the protective order for clear error.[2] A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that the trial court has made a mistake.[3] We review the superior court's interpretation of a statute de novo.[4] We apply our independent judgment to issues of res judicata and collateral estoppel.[5]

### B. McComas's Appeal Is Not Moot.

■ We first consider whether the appeal is moot. McComas asks us to vacate the September 2002 long-term protective order. Most of the protective order's provisions expired in March 2003.[6] But the provision prohibiting McComas from "threatening to commit or committing domestic violence, stalking, or harassment"[7] remains in effect indefinitely.[8] The protective order is permanently filed in a central registry of protective orders.[9] If McComas violates the quoted prohibition, he will be in violation of AS

11.56.740(a)(1), and subject to mandatory arrest under AS 18.65.530(a)(2).[10] McComas's appeal is therefore not moot.[11]

### C. The Superior Court Did Not Clearly Err in Finding that McComas Had Committed a Crime Involving Domestic Violence.

Alaska Statute 18.66.100(b) gives the superior court authority to issue a protective order if it "finds by a preponderance of the evidence that the respondent has committed a crime involving domestic violence against the petitioner." On September 10, 2002 the superior court found by a preponderance of the evidence that McComas had committed two crimes of domestic violence against Kirn: "criminal mischief and threats of harm." McComas challenges those findings.

■ McComas argues that the superior court erred in finding that his destruction of the windows in Kirn's mother's vehicle was a crime involving domestic violence against Kirn. Alaska Statute 18.66.990(3) defines a "crime involving domestic violence" as one or more specified offenses committed "by a household member against another household member." The definition of "household member" includes "adults or minors who are current or former spouses" and "adults or minors who are related or formerly related

1. McComas's appellate brief also asks us to vacate a protective order issued in August 2003. Because the August 2003 protective order was issued after McComas filed this appeal, it is not properly before us and we do not address it here.

2. *Harris v. Westfall*, 90 P.3d 167, 172 (Alaska 2004).

3. *Adams v. Adams*, 89 P.3d 743, 749 (Alaska 2004).

4. *J.M.R. v. S.T.R.*, 15 P.3d 253, 256 (Alaska 2001).

5. *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002).

6. At times pertinent here, AS 18.66.100(b)(2) provided that orders entered under "(c)(2)—(16) of this section are effective for six months unless earlier dissolved by court order." Following amendment of AS 18.66.100(b)(2) in 2004, such orders remain effective for one year.

7. AS 18.66.100(c)(1).

8. AS 18.66.100(b)(1).

9. AS 18.65.540(a).

10. AS 11.56.740(a)(1) provides in pertinent part: "A person commits the crime of violating a protective order if the person is subject to a protective order ... and knowingly commits or attempts to commit an act with reckless disregard that the act violates or would violate a provision of the protective order...." AS 18.65.530(a)(2) provides: "(a) [A] peace officer, with or without a warrant, shall arrest a person if the officer has probable cause to believe the person has ... (2) committed the crime of violating a protective order."

11. *Smith v. Smith*, 145 N.C.App. 434, 549 S.E.2d 912, 914 (2001) (holding appeal of expired domestic violence order not moot).

by marriage." [12]

■ McComas was convicted of criminal mischief in the third degree for breaking Kirn's mother's vehicle windows.[13] Alaska Statute 18.66.990(3) lists the offenses that are crimes involving domestic violence when committed against household members. Criminal mischief is one of the listed offenses.[14] Because Kirn's mother formerly had been related to him by marriage, McComas's conduct in damaging the vehicle would qualify as a "crime involving domestic violence." But there was no evidence before the superior court on September 10 that Kirn owned or shared the use of the vehicle. Reliance on the criminal mischief charge is therefore problematic: the superior court may issue a protective order only when "the respondent has committed a crime involving domestic violence *against the petitioner*." [15]

Nonetheless, the alternative ground relied upon by the superior court—threats of harm—justifies entry of the September 10 order. A "crime involving domestic violence" includes any "crime against the person under AS 11.41" committed by one household member against another.[16] Under AS 11.41.270(a), "[a] person commits the crime of stalking in the second degree if the person knowingly engages in a course of conduct that recklessly places another person in fear of death or physical injury, or in fear of the death or physical injury of a family member." "Course of conduct" means "repeated acts of nonconsensual contact involving the victim or a family member." [17] "Nonconsensual contact" includes "sending mail or electronic communications to that person" without that person's consent.[18] Thus, sending threatening mail can be stalking in the second degree.

On July 9, 2000, McComas sent Kirn a card that stated in part:

Maybe if [Kirn's son] is lucky his mother will recieve her punishment from God and get aids; then shrivel up and die, while he's still young. . . .

For being selfish and not doing whats best for [Kirn's son], for lying to God and breaking your vows, you will recieve one or more of the following: herpes, aids, syphilix, goneria, genital warts, cancer, clymidia, heart attack, brain tumor, or severe depression to the point of suicide.

Kirn received a second card on July 13, 2001—*after* Judge Joannides entered the no-contact order—that stated:

HEATHER, Today marks the one year anniversary of your adulterous relationship with scott. YOU KNOW THE CONSEQUENCES FOR THIS ACTION. JUDGEMENT DAY IS COMING! JESUS.

The back of the card read, "IT MUST SUCK TO BE YOU!"

On May 5, 2002 McComas wrote on Kirn's copy of a court document entitled "Mr. McComas'[s] Response to the Plaintiff[']s Reply to Mr. McComas'[s] Pleading Dated April 30, 2002": "P.S. There's no lower form of life on this planet than a dirty whore. I hope you are enjoying your worldly pleasures while you can because your judgment is coming." At the September 2002 hearing, Judge Morse asked Kirn to describe what she thought McComas's statements meant. She responded: "For him to cause me harm in some way. In fact, death."

On appeal, McComas argues that his statements "simply stated his religious belief that [Kirn] would go to hell for her actions." Based on the parties' testimony and his observations of McComas's demeanor at the September hearing, Judge Morse determined that McComas's written comments in the cards were intended as threats and that the

---

**12.** AS 18.66.990(5)(A), (F).

**13.** Under AS 11.46.482(a)(1), "[a] person commits the crime of criminal mischief in the third degree if, having no right to do so or any reasonable ground to believe the person has such a right, with intent to damage property of another, the person damages property of another in an amount of $500 or more."

**14.** AS 18.66.990(3)(E).

**15.** AS 18.66.100(b) (emphasis added).

**16.** AS 18.66.990(3)(A).

**17.** AS 11.41.270(b)(1).

**18.** AS 11.41.270(b)(3)(F).

anger behind them had not subsided. Judge Morse told the parties:

> I frankly am very troubled by [McComas's] conduct here today and his recent writings, and I don't see any reason to believe that he isn't going to explode next week or a month from now when he starts thinking about his wife and how he thinks he's been wronged. He clearly cannot deal with the fact that she's not married to him anymore, despite what he says. He's obsessed. There isn't a question in my mind that that's the case.
>
> . . . .
>
> I think that his written comments regarding her [adulterous] conduct and his belief that some sort of biblical judgment day is coming, are threats. Not merely of some biblical phenomenon, but of his response to her conduct if he thinks she continues to wrong him.
>
> I find Mr. McComas' demeanor on the stand to be very troubling. He is clearly pressured and angry and extremely emotional and very obsessed over his wife's conduct.

The superior court did not clearly err in finding that McComas's statements were threats. McComas's words can fairly be read to express a desire that Kirn suffer harm and a belief that she would. His hearing testimony indicated that his anger for Kirn had not diminished. He testified:

> I'm sitting in jail for just years thinking, you know, my wife's out there with some other guy and there's nothing I can do about it. And she just wants me—she wants me to get angry, you know, and just sit there and build up hatred for her. And she's going to use that against me. And she created, you know—I—I have a lot of anger for her but—you know, for what she did to my family.

Furthermore, damaging the vehicle windows could fairly be taken to reveal a willingness to act violently on his anger.

McComas argues on appeal that his statements, even if they were threats, were constitutionally protected speech. This argument has no merit; the United States Supreme Court has held that threats through which the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals are not constitutionally protected speech.[19]

■ Because McComas's threats could amount to stalking in the second degree,[20] the superior court did not commit legal error in relying on them as justification for the September 2002 protective order.[21]

**D. The Actions that Supported Issuance of the Protective Order Were Not Too Remote in Time To Justify the Order.**

■ McComas argues that the actions for which the superior court granted Kirn's request for the protective order were too remote in time to justify the order. We disagree. Although McComas destroyed the vehicle windows in October 2000, he made subsequent threats to Kirn in July 2001 and May 2002. Kirn petitioned for an ex parte protective order on July 23, 2002, just before McComas was scheduled to be released from prison. Only three months elapsed between McComas's last threat and Kirn's petition. Kirn points out that McComas was "unable to cause harm or execute upon any of his threats" during those three months because he was still incarcerated. Moreover, AS 18.66.100(e) provides: "A court may not deny a petition for a protective order under this section solely because of a lapse of time between an act of domestic violence and the

---

19. *Virginia v. Black,* 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); *see also Powell v. State,* 12 P.3d 1187, 1190 (Alaska App.2000).

20. *See* AS 11.41.270(a).

21. Kirn argues on appeal that McComas also committed assault in the fourth degree when he sent her the cards. Assault in the fourth degree involves words or other conduct that recklessly

place another person "in fear of *imminent* physical injury." AS 11.41.230(a)(3) (emphasis added). The threats were made by mail while McComas was still incarcerated and was not then scheduled for imminent release, and could not be read to contain a threat of imminent physical injury. There was consequently no assault in the fourth degree.

filing of the petition." McComas's actions were not too remote in time.

### E. The 2002 Protective Order Was Not Barred by the Court's Prior Denial of the Requested Order.

McComas argues that Kirn "was already denied a restraining order and cannot without further adverse action by [McComas] rec[ei]ve a new order on the same evidence already consider[e]d and denied." Kirn petitioned for both an ex parte and a long-term protective order on October 9, 2000. She cited McComas's abusive phone calls, unsolicited appearances at her workplace, and threats to take away her son as the reasons for her petition. The court issued an ex parte protective order that day and consolidated the domestic violence case with the parties' divorce case. It found probable cause to believe that McComas had committed a crime involving domestic violence—malicious destruction of property—against Kirn.

The superior court conducting the October 25, 2000 divorce hearing directed McComas to arrange visitation through someone else and not to call Kirn. That court saw no need, however, to extend the protective order; the court explained that it would address the issue in the divorce decree. The December 2000 divorce decree included a no-contact order that stated:

> The defendant [McComas] shall not take the child out of Anchorage. *The defendant shall not telephone or otherwise contact the plaintiff directly.* All visitation plans shall be coordinated through the visitation supervisor designated by the plaintiff. *The court hereby dissolves the domestic violence order that had been in place and substitutes this custody and visitation order in its place.*

(Emphasis added.) McComas argues that by dissolving Kirn's existing protective order and substituting a no-contact order, the divorce decree barred Kirn from petitioning

for a long-term protective order in 2002. He claims that "nothing new transpired between October of 2000 ... and the issuance of the long term protective order by Judge Morse." He also asserts that "the divorce decree was sufficient in curtailing Mr. McComas' contact with his wife."

Although he never identifies the legal principles potentially underlying this argument, McComas essentially contends that res judicata barred Kirn's petition for the 2002 order. Res judicata consists of claim preclusion and issue preclusion.[22] McComas's argument amounts to an argument for claim preclusion, which " 'prevents a party from suing on a claim which has been previously litigated to a final judgment by that party ... and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.' "[23] A final judgment in a prior action "bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[24]

We agree with Kirn that a "change in circumstance" justified the 2002 protective order. As Kirn argues, "[t]he previous order was not required and the divorce decree covering McComas' behavior was not appealed, as McComas was incarcerated and did not constitute a threat." When the superior court entered the divorce decree in 2000, McComas was incarcerated. Kirn's attorney told the court at the divorce hearing that McComas would probably be imprisoned for two more years. It was therefore unnecessary to issue a protective order or maintain the existing protective order; the decree's no-contact order effectively resolved Kirn's concerns. Moreover, the no-contact provisions of a long-term protective order would have expired after six months.[25] The no-contact order contained in the divorce decree was therefore the best way to prevent McCo-

**22.** *McElroy v. Kennedy,* 74 P.3d 903, 906 (Alaska 2003).

**23.** *Id.* (quoting *Dixon v. Pouncy,* 979 P.2d 520, 523 (Alaska 1999)).

**24.** *Id.* at 906–907 (internal quotes omitted).

**25.** AS 18.66.100(b)(2). *See supra* note 6.

mas from contacting Kirn beyond that six-month period.

When Kirn petitioned on July 23, 2002 for the ex parte and long-term protective orders, she wrote on the petition that McComas was due to be released in eight days. McComas was indeed released on July 31, although he was reincarcerated a day later for violating the conditions of his parole. The superior court granted Kirn's request for the ex parte order at the August 7 domestic violence hearing, but noted: "If it turns out that, you know, the parole board says go back to jail for another year . . . you really don't need this protective order because he's not coming out." Between the August 7 and September 10 hearings, McComas was transferred to a correctional community residential center. McComas testified at the September 10 hearing that he could be released as soon as October 2002. Explaining that he did not believe McComas when he testified that he would stay away from Kirn, Judge Morse then issued the challenged long-term protective order, which not only prohibited McComas from contacting Kirn, but also ordered him to stay away from her home, workplace, child's daycare, and vehicle. The 2002 protective order therefore accommodated Kirn's need for additional protection following McComas's anticipated release. These changed circumstances justified the additional protections afforded by the September 2002 protective order.[26]

The protective order was also justified by the additional security it provided. The 2000 no-contact order was apparently insufficient to deter McComas from contacting Kirn. He repeatedly violated the order by contacting Kirn directly by mail or telephone. Although "no contact" was also a condition of McComas's parole, the superior court in September 2002 was justified in concluding that additional protections were warranted given McComas's history of parole violations and his disregard for the divorce decree's no-contact order. Under the circumstances, the court's decision to issue the protective order was reasonable.

26. *Fardig v. Fardig,* 56 P.3d 9, 12 (Alaska 2002) (holding res judicata and collateral estoppel in-

## IV. CONCLUSION

We therefore AFFIRM the September 10, 2002 protective order.

applicable because of material change of circumstances).