NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GREGORY P., | ) | |
| | ) | Supreme Court No. S-14995 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-03380 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JENNIFER P., on behalf of | ) | AND JUDGMENT* |
| B.P., a minor, | ) | |
| | ) | No. 1479 – March 5, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Douglas C. Perkins, Hartig Rhodes LLC, Anchorage, for Appellant. Notice of Non-Participation filed by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.      INTRODUCTION

Gregory P. challenges the long-term domestic violence protective order entered against him December 7, 2012, on behalf of his son, B.P.[1] He contends that the superior court clearly erred in its findings. Gregory also argues that the superior court

---

\*      Entered under Appellate Rule 214.

[1]      Initials are used throughout to protect the privacy of the minor child.

abused its discretion by continuing the December 6, 2012 proceeding and by allowing B.P. to testify. Because the superior court did not clearly err in its factual findings and did not abuse its discretion, we affirm the superior court's grant of the long-term domestic violence protective order.

## II.    FACTS AND PROCEEDINGS

Jennifer P. and Gregory P. were divorced in 2011 after a trial conducted by Superior Court Judge Frank A. Pfiffner. The parties were granted shared physical custody of their minor son, B.P.

On November 1, 2012, B.P.'s school counselor informed the Office of Children's Services and the Anchorage Police Department that B.P. had suspicious bruising. The police called Jennifer, requesting that she pick B.P. up at school.[2] As a result, Jennifer immediately sought both an ex parte 20-day protective order and a long-term domestic violence protective order against Gregory. Jennifer's petition was filed on B.P.'s behalf and focused on an October 28, 2012 incident at Gregory's house during which B.P. sustained injuries.

An ex parte hearing on the 20-day protective order was conducted by Magistrate Judge David Bauer. Jennifer and B.P. both responded to the magistrate judge's questions, and B.P. testified that Gregory picked him up in the kitchen and "threw [him]" and that his chin and face hit the floor. The magistrate judge found that the evidence at the hearing provided "probable cause [that] there [was] assault or reckless endangerment" of B.P. by Gregory. In light of these findings and the standards articulated in AS 18.66.100,[3] the magistrate judge granted Jennifer's petition for a 20-day

---

[2]    Gregory had physical custody of B.P. that day and, without intervention, B.P. would have been returned to Gregory after school.

[3]    AS 18.66.100 describes the process and eligibility for obtaining a protective
(continued...)

protective order, instructing Gregory to have no contact with B.P. other than by e-mail or telephone.

The long-term petition was scheduled for a hearing on December 6, 2012, in the superior court. But over Gregory's objection, Judge Pfiffner continued the hearing until December 7, 2012, so that B.P. would be available to testify. Gregory argued that Jennifer's inability to present her case on the scheduled hearing date should result in dismissal with prejudice of the petition for a domestic violence protective order.

At the December 7, 2012 hearing, Gregory conceded that on October 28, 2012, B.P. sustained injuries — including bruising on his chin and cheek and an abrasion on his lip — in an incident that occurred in Gregory's kitchen. Testimony from B.P., Gregory, and the son of Gregory's girlfriend established that Gregory had become frustrated with B.P.'s behavior before bedtime and caused injury to B.P. B.P. reported that Gregory "picked [him] up and [threw] him . . . softly." Gregory's girlfriend's son contended that Gregory "shoved" B.P. Gregory characterized the contact as "grabb[ing B.P.] by the forearm, kind of pull[ing] him around . . . and [giving] him a push towards the family room." The force used by Gregory caused B.P. to fall and hit his chin and face, resulting in bruising and a "cracked lip." At the hearing, Gregory advanced the argument that the conduct was reasonable parental discipline as defined by AS 11.81.430.[4]

In addition to the October 28 incident, Jennifer alleged two other incidents of domestic violence. Jennifer contended that a phone call made by Gregory to Jennifer

---

[3](...continued)
order and details the relief available.

[4]     "When and to the extent reasonably necessary and appropriate to promote the welfare of the child . . . a parent . . . may use reasonable and appropriate nondeadly force upon that child . . . ." AS 11.81.430(a)(1).

on November 6, 2012, violated the 20-day protective order entered by Magistrate Judge Bauer pursuant to AS 11.56.740(a)(1).[5]  Jennifer also presented a description of an incident in which Gregory had allegedly kicked or thrown B.P. into the side of the family vehicle.

The superior court found that the "telephone call [was] an authorized contact by virtue of the 20-day order" and thus was not domestic violence.  The superior court found that the alleged driveway incident could not be substantiated.

But the superior court concluded that the October 28 incident in the kitchen was fourth-degree assault and amounted to domestic violence.[6]  The superior court determined that B.P. suffered physical injury when Gregory pushed him, that the incident was reckless, and that it did not constitute reasonable discipline.  Based on its finding that the incident was "situational," a "one-time deal," and "[not] that serious," along with a finding that Gregory was "angry and out of control" during the incident, the superior court ordered Gregory to complete a 12-week anger management program of his choosing within a year of the order.  In addition, the superior court warned Gregory that if the conduct was repeated, it could affect his custodial visitation.  But the superior court did not modify Gregory's shared custody of B.P. based on the October 28 incident, and

---

[5]     "A person commits the crime of violating a protective order if the person . . . knowingly commits . . . an act with reckless disregard that the act violates . . . a provision of the protective order" entered pursuant to AS 18.66.100(c). AS 11.56.740(a)(1).

[6]     AS 18.66.990(3)(A) defines "domestic violence" to include "a crime against the person under AS 11.41" that is committed "by a household member against another household member."  AS 11.41.230(a)(1) defines assault in the fourth degree as a crime against the person if the perpetrator "recklessly causes physical injury to another person."

the superior court explained that the incident by itself did not create a history of domestic violence for the purpose of a custody determination in the future.[7]

Gregory appealed the long-term domestic violence order. Jennifer, on behalf of B.P., declined to participate in the appeal.

## III.  STANDARD OF REVIEW

We review a trial court's decision to grant or deny a protective order for abuse of discretion."[8]  "We review the factual findings supporting issuance of the protective order for clear error.  A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that the trial court has made a mistake."[9] "[G]ranting or denying a continuance is within the discretion of the trial judge" and is reviewed for "an abuse of discretion."[10]  And a trial court's admission of evidence is generally also reviewed for abuse of discretion.[11]

## IV.  DISCUSSION

Gregory contends that the superior court erred in entering the domestic violence order because (1) the "shoving" incident was not so reckless as to constitute assault in the fourth degree and was a use of permissible force against a child pursuant

---

[7]     AS 25.24.150(g) and AS 25.24.150(h) provide the standards to be used in determining custody in situations in which "a parent has a history of perpetuating domestic violence."  One case in which the provisions apply is when a "parent has engaged in more than one incident of domestic violence." AS 25.24.150(h).

[8]     *Cooper v. Cooper*, 144 P.3d 451, 454 (Alaska 2006).

[9]     *McComas v. Kirn*, 105 P.3d 1130, 1132 (Alaska 2005) (internal citations omitted).

[10]     *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 182-83 (Alaska 2009) (citing *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 259 (Alaska 1999)).

[11]     *Yang v. Yoo*, 812 P.2d 210, 217 (Alaska 1991).

to the reasonable parental force exception of AS 11.81.430(a)(1); (2) the domestic violence protective order proceeding should not have been continued from December 6 to December 7, 2012; and (3) it was error for the superior court to allow B.P. to testify. Gregory also argues that the superior court erred in fashioning its relief.

## A. The Superior Court Did Not Err By Entering The Long-Term Domestic Violence Order.

### 1. The superior court did not err by finding that Gregory assaulted B.P.

Gregory challenges the factual basis for the superior court's determination, maintaining that there was no evidence to suggest that he assaulted B.P. without justification. A person commits assault in the fourth degree when the person "recklessly causes physical injury to another person" without legal justification.[12] An act by a parent against a child that would otherwise constitute assault in the fourth degree may not be a criminal act if deemed by a trier of fact to be reasonable parental discipline.[13] The superior court found that Gregory assaulted B.P. and that the assault was not justifiable parental discipline. The superior court found that Gregory pushed B.P., resulting in physical injury to B.P. The superior court also determined that "shov[ing] your child around" is reckless conduct and not reasonable parental discipline.

First, Gregory argues that B.P.'s testimony was not credible and that the superior court "effectively found [B.P.] to be not credible given that he had testified that his father 'picked [him] up' or 'threw [him].' " (Alterations in original.) The record does not indicate that the superior court erred in its consideration of the testimony. A

---

[12]  AS 11.41.230(a)(1).

[13]  AS 11.81.430(a)(1).

finder of fact may believe all, part, or none of a witness's testimony.[14] And we give deference to the superior court's determinations of credibility, especially when gleaned from the consideration of oral testimony.[15]

B.P. acknowledged in his testimony a desire to reside with both Jennifer and Gregory, undercutting Gregory's contention that his testimony was "tainted" in favor of Jennifer. And there is reason to believe that the superior court considered credible B.P.'s testimony that Gregory "got mad" before the incident occurred because the superior court found that Gregory was "angry and out of control" at the time of the incident. To be sure, it is also clear that parts of B.P.'s testimony were not fully credited, as argued by Gregory, because the superior court found that B.P. was shoved rather than thrown. But as we discuss above, such partial crediting of testimony is well within the discretion of a trial court. Accordingly, there is no indication that the superior court erred in its consideration of B.P.'s testimony.

Gregory next suggests that without B.P.'s testimony there was insufficient evidence to support the superior court's finding that Gregory's conduct was unreasonable parental discipline. But there was evidence to suggest that Gregory's conduct was unreasonable, and indeed Gregory conceded that he "grabbed [B.P.] by the forearm, kind of pulled him around . . . and gave him a push towards the family room."

---

[14] *See Born v. State*, 633 P.2d 1021, 1024 (Alaska App. 1981) (indicating that it is proper for a finder of fact to believe all, part, or none of the testimony of a witness).

[15] *See Ebertz v. Ebertz*, 113 P.3d 643, 650 (Alaska 2005) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility . . . ." (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999))).

There is no indication that the judge clearly erred by finding that B.P. was shoved or in determining that the conduct was unreasonable as a form of discipline.[16]

### 2. The superior court did not err by continuing the hearing.

"Granting or denying a continuance traditionally has been within the discretion of the trial judge . . . ."[17] The superior court has "broad discretion to determine whether a mid-trial continuance should be granted in order to allow a party to secure the testimony of an absent witness."[18]

Gregory argues that he was prejudiced by the one-day continuance because he had to "arrange for witnesses to take time off from work (and school) to attend both hearings." We conclude that the trial court did not abuse its discretion in continuing the proceedings. The superior court commented during the December 6 proceeding that "without [B.P.'s testimony], there [would not] be a [domestic violence] order." The testimony was thus necessary because the content of B.P.'s testimony was unavailable from an alternate source. And the continuance was brief, as B.P. testified the very next morning. The superior court did not abuse its discretion by ordering the continuance and declining to dismiss the case.

---

[16] Gregory also argues that Jennifer filed the petition for a domestic violence protective order disingenuously and that this should preclude a finding that domestic violence occurred. But the superior court specifically found that the driving force behind Jennifer's petition was the school's involvement of OCS, not her acrimonious relationship with Gregory. This finding is not clearly erroneous.

[17] *Klockenbrink v. State*, 472 P.2d 958, 964 (Alaska 1970); *see also Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 182-83 (Alaska 2009).

[18] *Ross v. State*, 836 P.2d 378, 381 (Alaska App. 1992) (citing *Williams v. State*, 614 P.2d 1384, 1386 (Alaska 1980)).

**3.      The superior court did not err by allowing B.P. to testify.**

In addition to arguing that B.P.'s testimony was incredible, Gregory argues that it was an abuse of discretion for the trial judge to allow B.P., age 11, to testify. Gregory relies on *Helen S.K. v. Samuel M.K.*[19] to support this argument. In *Helen S.K.*, we considered the appropriateness of conducting an in camera interview with a child in order to determine the child's preference in custody cases.[20] We noted that "there are many valid reasons to avoid allowing the children to become witnesses and questioned in open court, not least of which is the harm the child might suffer upon being forced to participate in a public adversarial proceeding involving his or her own parents."[21] Here, B.P.'s testimony went well beyond the issue of parental preference that was at issue in *Helen S.K.*; he provided critical evidence necessary to adjudicate the dispute. And it would have been difficult to preserve the testimony in an in camera setting in a manner consistent with Gregory's right to cross-examination. Allowing B.P. to testify was not an abuse of discretion.[22]

**B.      The Superior Court Ordered Proper Relief.**

Gregory challenges the terms of the superior court's order in two respects. First he objects to the superior court's explanation of the serious collateral consequences of the order. He also argues that it was error to order his participation in a 12-week

---

[19]      288 P.3d 463 (Alaska 2012).

[20]      *Id.* at 473-75.

[21]      *Id.* at 473-74.

[22]      Gregory also argues that B.P.'s testimony was tainted by his previous testimony at the November ex parte 20-day domestic violence hearing. This argument, however, is presented in a "single conclusory paragraph without citation of any authority" and "is not adequate to put the issue before the court." *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970).

anger management program. But as the superior court explained at the December 7 hearing, the order places Gregory on notice that if there were an additional incident of domestic violence, there could be a finding under AS 25.24.150(g) and (h) of a history of domestic violence. The superior court offered this explanation in response to a question from Gregory's attorney about the legal effect of the order on related matters. Far from ordering that Gregory was under a presumption of having a history of domestic violence, the superior court expressly made a "finding to the contrary," indicating that Gregory would be subject to the AS 25.24.150(g) presumption if a judge in the future finds that he has committed an additional act of domestic violence.[23] The superior court's detailed explanation of the serious consequences of a domestic violence order is consistent with the statutory mandate that a trial court "make reasonable efforts to ensure that the order is understood by the petitioner and by the respondent."[24]

The 12-week anger management program was the only form of relief ordered by the superior court.[25] At the hearing B.P. twice indicated that Gregory was mad during the incident, and Gregory conceded that he was angry. Moreover, Gregory described grabbing B.P., pulling him around the kitchen island, and shoving him. Thus, it was not clearly erroneous for the superior court to conclude that Gregory needed help

---

[23]   This is consistent with the language of AS 25.24.150, which requires a presumption against custody when there is a history of domestic violence. AS 25.24.150(g). A history of domestic violence can be shown if one incident of domestic violence caused "serious physical injury" or there has been more than one incident of violence. AS 25.24.150(h). The domestic violence found by the superior court and affirmed here did not cause serious bodily injury, and thus another incident would have to be substantiated for the presumption to apply.

[24]   AS 18.66.100(d)(1).

[25]   A court may order "relief the court determines necessary to protect the petitioner or any household member." AS 18.66.100(c)(16).

in learning how to manage his anger and to order participation in an anger management program of limited duration.

## V.    CONCLUSION

We AFFIRM the superior court in all respects.