NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TYLER C., | ) | |
| | ) | Supreme Court No. S-19263 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-23-00017 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| DESIRAE C., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2137 – March 11, 2026 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: David A. Case, 49th State Law, LLC, Soldotna, for Appellant. No appearance by Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

# I.  INTRODUCTION

A mother petitioned for a long-term domestic violence protective order (DVPO) against the father on behalf of their nine-year-old son, alleging that the father used excessive force when disciplining the child. After hearing testimony and taking other evidence, the superior court granted the DVPO. On appeal, the father argues that

---

\*       Entered under Alaska Appellate Rule 214.

the DVPO must be invalidated because the court committed various factual and legal errors. Observing no such errors, we affirm the superior court's ruling.

## II.    FACTS AND PROCEEDINGS

Tyler C. and Desirae C. are the divorced parents of two children, nine-year-old Riley and six-year-old Evan.[1]  Litigation in April 2022 resulted in shared physical custody of the children under an order issued by the superior court.

In January 2023 Desirae filed petitions for short- and long-term DVPOs against Tyler on behalf of both children. She alleged that it was unsafe for the children to be with Tyler because he physically and emotionally abused them. In the petition, Desirae detailed an incident in which Tyler allegedly threw a television in Riley's direction, hit him with a belt, and grabbed his neck and dunked his head in the toilet, causing bruising on his neck and buttocks. Based on the allegations, a magistrate judge issued a short-term DVPO for both children against Tyler.

The matter of the long-term DVPO was assigned to the same superior court judge who had previously presided over the parties' custody case. The court held hearings and took evidence, including testimony from an Office of Children's Services (OCS) investigator, as well as both Tyler and Desirae.

The OCS investigator testified that after receiving a report of the incident between Tyler and Riley, he documented allegations that Tyler was intoxicated and, in a misguided attempt at discipline, had inappropriately punished Riley by dunking his head in the toilet several times. He testified that he observed injuries on Riley's neck and marks on his face. He explained that OCS did not intend to open a child in need of aid case at that time because Desirae took immediate protective action by seeking a DVPO for Riley. On cross examination, the investigator acknowledged that Riley had

---

[1]    We use pseudonyms for the children and initials for the last names of the parents to protect the family's privacy.

made an allegation of abuse against Tyler one year earlier that prompted an OCS investigation. But the earlier investigation ended after Riley recanted.

Desirae testified that earlier on the day of the alleged abuse, she and Tyler had a phone conversation about an incident at school where Riley was accused of bullying two classmates. On the phone call, Tyler stated, "I'm going to show [Riley] what a bully is. He wants to be a bully, I'm going to show him what a bully is." According to Desirae, Tyler called her later that night and told her that he "beat [Riley's] ass with a belt," smashed his television, and told Riley he could only urinate in an empty water bottle for the night as punishment. Desirae stated her belief that Tyler was intoxicated that night because his aggressive tone and slow speech were consistent with her past interactions with Tyler while he was intoxicated. She testified that Riley then called her around midnight using Tyler's phone, requesting to be picked up from Tyler's house.

After retrieving Riley and observing his injuries, Desirae contacted police that same night, and she took Riley to the hospital the next day. The hospital report noted that Riley had a right buttock contusion and abrasions to his neck. A few days later at a follow-up appointment where Desirae was present, Riley told the doctor about his neck, shoulder, and gastric pain. Desirae explained to the court that Tyler subsequently had been criminally charged with assault in the fourth degree because of the incident.

Tyler also testified, explaining that on the day of the incident, he learned that Riley had been bullying two girls at school, so he gave Riley a spanking with an open hand. He also testified that he had taken the power cord from Riley's television as a punishment to prevent him from using it, which is why, in Tyler's view, Riley said that the television was "broken." Tyler confirmed that he had called Desirae that night to let her know about the incident. According to Tyler, Riley stayed in his room until about midnight, when he told Tyler that he wanted to stay with Desirae. Desirae picked up Riley shortly thereafter. Tyler also testified that Riley often had bruises from sliding

down the porch stairs and playing hockey and baseball. Tyler believed the bruising reported by the doctors was from Riley playing hockey. He denied dunking Riley's head in the toilet, forcing him to urinate in a water bottle, and throwing the television.

In oral findings, the superior court denied Desirae's petition on behalf of Evan because the evidence related only to the incident with Riley. The court then granted the long-term DVPO with respect to Riley, finding that the level of physical force used by Tyler against Riley was "in excess of what was needed" for appropriate corporal punishment. The court distinguished the current incident from the prior incident in which Riley had made allegations of harm to OCS. The court acknowledged that certain details of Riley's current story were not corroborated by the evidence, such as a lack of damage to the television despite Tyler allegedly throwing it. Overall, however, the court found that the "basic bare bones" of Riley's account remained "relatively consistent" with his "observed injuries" and he did not recant. The court considered Tyler's admission to using corporal punishment and testimony from Desirae and the OCS investigator regarding Riley's injuries, concluding that Riley's injuries were consistent with excessive force. It rejected Tyler's argument that Desirae brought the DVPO petitions in bad faith and expressed concern with Tyler's history of alcohol consumption. The court issued an order finding that Tyler had committed "assault or reckless endangerment" against Riley.

Tyler appeals.

## III. STANDARD OF REVIEW

"The superior court's decision to grant or deny a protective order is reviewed for abuse of discretion."[2] We "review the factual findings underlying a domestic violence protective order for clear error,"[3] including the court's finding that a

---

[2] *Vince B. v. Sarah B.*, 425 P.3d 55, 60 (Alaska 2018).

[3] *Id.*

crime of domestic violence occurred.[4]  "A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that the trial court has made a mistake."[5]  "We use our independent judgment when interpreting a civil rule," including whether the superior court's findings of fact and conclusions of law were sufficiently detailed and explicit under Alaska Civil Rule 52(a).[6]

## IV.  DISCUSSION

### A.  We Affirm The Superior Court's Issuance Of The Long-Term DVPO.

Tyler makes several arguments challenging the superior court's issuance of the long-term DVPO.  First, Tyler argues that under the circumstances he was legally privileged to use reasonable corporal punishment against Riley and that the court erred in finding that he committed assault or reckless endangerment.  Second, he argues that the court failed to make sufficient factual findings.  Finally, he argues that the court abused its discretion by issuing the DVPO because it improperly relied on the existence of criminal charges and an OCS investigation to summarily conclude that he committed a crime of domestic violence.  For the reasons explained below, we reject Tyler's arguments and affirm the superior court's issuance of the DVPO.[7]

---

[4]  *Id.* at 64-65 (reviewing finding of crime of domestic violence for clear error).

[5]  *McComas v. Kirn*, 105 P.3d 1130, 1132 (Alaska 2005).

[6]  *Fletcher v. Trademark Constr., Inc.*, 80 P.3d 725, 729-30 (Alaska 2003).

[7]  Most of the provisions in the long-term DVPO at issue in this case are no longer in effect.  But this case is not moot because the order's prohibition on "committing or threatening to commit acts of domestic violence, stalking or harassment" remains in place unless dissolved by court order.  *See Eng v. State, Dep't of Pub. Safety*, 557 P.3d 1198, 1202-03 (Alaska 2024) (upholding validity of provision continuously prohibiting such acts).

**1.** **The superior court did not clearly err by finding that Tyler committed assault or reckless endangerment.**

The superior court found by a preponderance of the evidence that Tyler committed assault or reckless endangerment against Riley. On appeal Tyler argues that the court's finding was clearly erroneous. He maintains that the evidence was insufficient for the court to find that he exceeded the scope of legally permissible, reasonable corporal punishment.[8]

The superior court's finding that Tyler committed assault or reckless endangerment was not clearly erroneous.[9] The court considered testimony from Desirae and the OCS investigator about the extent of Riley's injuries. The investigator observed "injuries on his neck" and "marks on his face." Desirae testified that she saw "bruises on his butt, a welt on his leg, and marks on his neck." The investigator testified that Tyler told him that he spanked Riley three times, and Tyler admitted in testimony that he spanked Riley. Moreover, Desirae testified that after the incident Tyler told her in a phone conversation that he "beat [Riley's] ass with a belt." Tyler's admissions — coupled with the testimony about Riley's injuries — were more than sufficient for the court to find that Tyler caused Riley's injuries by using unreasonable and excessive force.

The evidence was also sufficient for the court to conclude that Tyler acted recklessly. To make a finding of assault or reckless endangerment, the court must find

---

[8]    *Peter R. v. B.M.R.*, 573 P.3d 40, 44 (Alaska 2025) (explaining that "reasonable corporal discipline" is affirmative defense to parents' use of force against children if parent can show (1) force was "reasonable and appropriate nondeadly force" and (2) force was employed "[w]hen and to the extent reasonably necessary and appropriate to promote the welfare of the child" (quoting AS 11.81.430(a)(1)) (internal quotation marks omitted)).

[9]    *Vince B.*, 425 P.3d at 60 (reviewing for clear error superior court's finding that crime of domestic violence occurred).

that a person acted recklessly with respect to the risk of physical injury.[10] As we discussed in *Peter R. v. B.M.R.*:

> A person acts recklessly with regard to a result or circumstance "when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Disregarding the risk must be "a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[11]

Tyler argues there was no evidence that he acted recklessly. We disagree. The superior court found Desirae's testimony regarding her belief that Tyler was intoxicated during the evening of the altercation to be credible. Testimony from both Desirae and the OCS investigator about Riley's visible injuries support the court's finding that Tyler "used physical force on [Riley] that was in excess of what is needed." Further, in Tyler's own words, through an admission to Desirae, he "beat [Riley's] ass" to "show him what a bully is."

Considering these statements and the extent of Riley's injuries,[12] we hold that the superior court did not clearly err by concluding that Tyler recklessly disregarded a risk of physical injury when he used force on Riley. And although the superior court did not expressly address Tyler's claim of an affirmative defense, reasonable corporal punishment, the court made findings that Tyler's use of force was reckless and "in excess of what was needed." These findings are necessarily inconsistent with Tyler's assertion that his use of force was "reasonably necessary and appropriate to promote

---

[10]    AS 11.41.230(a)(1); AS 11.41.250(a); AS 11.81.900(a)(3).

[11]    573 P.3d at 44 (quoting AS 11.81.900(a)(3)).

[12]    *Cf. id.* at 44-46 (affirming finding of recklessness when father "angrily push[ed] a nine-year-old child to the ground" to show child "how Grandma felt" when she suffered fall that caused her serious pain, even absent child sustaining "significant injury").

the welfare of the child."[13]   Thus, Tyler failed to meet his burden of proving the affirmative defense of reasonable corporal punishment.[14]

### 2.    The superior court made sufficient factual findings.

Tyler briefly argues that the superior court erred by failing to make the findings of fact necessary to support its issuance of the DVPO. He argues that the court did not make findings related to his mental state as required by law. Tyler also argues that the court failed to make the necessary finding that he acted unreasonably. Finally, Tyler argues that the court failed to make express credibility findings, which he asserts were required because the court discredited his testimony denying responsibility for Riley's injuries.

Under Civil Rule 52(a), "the superior court must . . . make its findings with sufficient specificity that we may review both the grounds for its decision and its application of the law to the facts."[15]  And when a court issues a DVPO, it must find by a preponderance of the evidence that a crime of domestic violence has occurred.[16]  In *Solomon v. Solomon* we held that the superior court's summary finding of domestic violence was improper where "[t]he court did not make findings as to what actually

---

[13]    AS 11.81.430(a)(1); *see also Peter R.*, 573 P.3d at 44-46 (rejecting reasonable corporal punishment as justification for pushing child to ground in manner "intended to cause and capable of causing serious pain" despite the child not sustaining "significant injury").

[14]    AS 11.81.900(b)(2)(B) (explaining that "defendant has the burden of establishing [an affirmative] defense by a preponderance of the evidence").

[15]    *Solomon v. Solomon*, 420 P.3d 1234, 1242 (Alaska 2018) (quoting *Price v. Eastham*, 128 P.3d 725, 731 (Alaska 2006)); *see* Alaska R. Civ. P. 52(a) ("In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . .").

[16]    AS 18.66.100(b); *see also McComas v. Kirn*, 105 P.3d 1130, 1132 (Alaska 2005).

happened during [the alleged violent] incidents, state which of these incidents involved domestic violence crimes, or indicate what crimes were committed."[17]

Here, the superior court made sufficient factual findings to support its issuance of the DVPO. At the hearing, the court found by a preponderance of the evidence that Tyler "used physical force on [Riley] that was in excess of what was needed." And the court included in its written findings that Tyler committed "assault or reckless endangerment" against Riley based on the allegations in the petition and the testimony. The court's findings are sufficiently detailed for us to understand the conduct that the court considered and determined to be a crime of domestic violence, which was Tyler's use of physical force on Riley that resulted in bruising to his face, neck, and buttocks.[18]

Contrary to Tyler's suggestion, the superior court was not required to make express findings with respect to his mental state or the reasonableness of his actions. Both assault and reckless endangerment require that a defendant act recklessly.[19] The court's express finding that Tyler "used physical force on [Riley] that was in excess of what was needed," coupled with the finding that Tyler committed assault or reckless endangerment, necessarily contains the implicit determination that Tyler acted recklessly by unreasonably disregarding a risk of harm to Riley under the circumstances. More detailed findings are not required to support the DVPO.

---

**17** *Solomon*, 420 P.3d at 1242.

**18** *Cf. id.* (holding that superior court made insufficient factual findings to support issuance of DVPO where it did not specify which incidents involved crimes of domestic violence or indicate which crimes were committed).

**19** AS 11.41.230(a)(1) (defining crime of fourth-degree assault as "recklessly caus[ing] physical injury to another person"); AS 11.41.250(a) (defining crime of reckless endangerment as "recklessly engag[ing] in conduct which creates a substantial risk of serious physical injury to another person").

Finally, the superior court was not required to make an explicit finding that Tyler's testimony was not credible. In *Samuel H. v. State, Office of Children's Services*, we held that the superior court made insufficient factual findings where it summarily concluded that an incarcerated father failed to make adequate provisions for the care of his child.[20] There, the father's unrebutted testimony, if true, was sufficient to establish that he did make adequate arrangements for the care of his child.[21] We held that the court's conclusory finding that the father failed to make adequate arrangements was not sufficient for appellate review because the court did not otherwise make factual findings or an explicit determination that it found the father's testimony on this point was not credible.[22]

Our holding in *Samuel H.* does not apply under these facts and circumstances. Here, the superior court explicitly found that Tyler committed assault or reckless endangerment against Riley, explaining that Tyler used excessive force while disciplining him. Although Tyler denied dunking Riley's head in the toilet and hitting him with a belt, Tyler's testimony was rebutted by testimony from Desirae and the OCS investigator regarding Riley's injuries as well as Tyler's admissions to Desirae during their phone conversation. Because Tyler's testimony was directly contradicted by other testimony that the court relied upon in its decision, the court's factual finding that Tyler used excessive force is based on an implicit acceptance of Desirae's testimony as being more credible than Tyler's testimony. Further explanation by the superior court was not necessary.

---

[20] *Samuel H. v. State, Off. of Child.'s Servs.*, 175 P.3d 1269, 1272-75 (Alaska 2008).

[21] *Id.* at 1274.

[22] *Id.* at 1274-75.

### 3. The superior court did not abuse its discretion by granting the long-term DVPO.

Tyler briefly argues that the superior court abused its discretion[23] by granting the long-term DVPO. He argues that the court improperly relied on the existence of his criminal charges and the OCS investigation without making sufficient factual findings to support its issuance of the DVPO. As explained above, the court found by a preponderance of the evidence that Tyler committed assault or reckless endangerment, explaining in its oral findings that Tyler's use of excessive force caused Riley's injuries. Given the ample evidentiary support for the court's finding that Tyler committed assault or reckless endangerment against Riley, it was not an abuse of discretion for the court to issue a long-term DVPO.[24]

To the extent Tyler is arguing that the superior court erred by considering the existence of criminal and OCS investigations, his argument was not preserved.[25] Alaska Evidence Rule 103(a)(1) requires a timely objection to preserve for appeal a challenge to the superior court's admission of evidence.[26] The OCS investigator testified about OCS's ongoing inquiry into the alleged incident of domestic violence

---

[23] *See Vince B. v. Sarah B.*, 425 P.3d 55, 60 (Alaska 2018) (reviewing issuance of DVPO for abuse of discretion).

[24] *See* AS 18.66.100(b) (allowing court to issue DVPO if it finds that crime of domestic violence occurred).

[25] When evidentiary issues are not preserved, we may still review them for plain error. Alaska R. Evid. 103(d). However, we do not review Tyler's argument about the court's consideration of OCS and police investigations for plain error because he did not address plain error in his briefing. *Jouppi v. State*, 566 P.3d 943, 959 n.104 (Alaska 2025); Alaska R. App. P. 212(c)(1)(H) ("For any issue not raised or ruled on in the lower court, the appropriate argument section must address the applicability of the plain error doctrine.").

[26] *See Timothy W. v. Julia M.*, 403 P.3d 1095, 1104-05 (Alaska 2017); *Amy M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 253, 257-58 (Alaska 2013).

and Tyler's attorney did not raise any objection.  Further, Tyler's attorney did not object when Desirae testified that Tyler had been criminally charged with assault.  Therefore, Tyler did not preserve this argument.

But even if he had preserved this argument, Tyler's characterization of the superior court's analysis is incorrect.  The court did not *presume* that Tyler committed a crime of domestic violence *solely* because of the existence of criminal and OCS investigations.   Rather, the superior court considered testimony regarding Riley's injuries and Tyler's admissions — in addition to the existence of pending criminal and OCS investigations — as support for its finding that Tyler committed a crime of domestic violence.   The criminal charges and OCS investigation also have an independent relevance because they provide context; it is rational to presume that allegations of physical abuse of a child will be reported to OCS and police.  In the same way, the absence of reports to authorities and resulting investigations would provide relevant context, arguably casting doubt on the veracity or reliability of the allegations. Thus, the superior court did not err by considering the existence of criminal and OCS investigations.

**B.** **Even If Erroneous, The Superior Court's Consideration Of Riley's Statements And Medical Records Was Harmless Error.**

Tyler argues that the superior court erred by relying on Riley's medical records without having them formally admitted as evidence.  He also argues that the court erroneously allowed Desirae to testify about Riley's out of court statements.

Desirae submitted three exhibits containing Riley's medical records. Desirae testified about the contents of the exhibits, including the doctors' recorded observations of Riley's injuries, photographs of the injuries, and Riley's out of court statements made to medical providers contained therein.  But the exhibits were not offered or admitted as evidence at the hearing.   Tyler argues that under these circumstances the court was not permitted to rely on the medical reports without

admitting them under Alaska Civil Rule 43.1(c).  He also suggests that Riley's statements to doctors are inadmissible hearsay.[27]

Assuming, without deciding, that the superior court erred by considering this evidence, we observe that any error was harmless.[28]  There was ample, admissible non-hearsay testimony presented to the court that was independent of both the medical reports and Riley's statements to doctors.  The OCS investigator testified that he observed physical injuries on Riley's neck and face.  Desirae testified that she observed "bruises on his butt, a welt on his leg, and marks on his neck."  And the court could conclude that Tyler was the cause of the injuries without relying on Riley's statements to doctors:  Tyler admitted that he spanked Riley and Desirae relayed Tyler's admission that he "beat [Riley's] ass with a belt."  The court did mention the medical report and Riley's statements in its oral findings, stating that the "doctor observed the injuries" that were "corroborated by [Riley's] statements to the doctor."  But the court noted that Desirae and the OCS investigator had also observed the injuries, which were corroborated by Tyler's admissions directly to Desirae.  Given that there was ample

---

[27]    The superior court overruled Tyler's hearsay objection during the trial, determining that Riley's statements were admissible as statements made for the purpose of medical treatment or diagnosis.  Alaska R. Evid. 803(4) (permitting admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment").

[28]    *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007) (explaining that "we will reverse only if that error was not harmless" and that "[a] trial court's error in admitting evidence 'is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on [the trier of fact]' " (quoting *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 142 (Alaska 2004))); *see also Price v. State*, 590 P.2d 419, 420 (Alaska 1979) (noting that prejudicial effect of erroneously admitted evidence is minimized in bench trials).

admissible evidence to support the court's findings, we hold that any potential evidentiary errors were harmless.[29]

## V.    CONCLUSION

The superior court's decision is AFFIRMED.

---

[29]    *Cf. Ass'n of Vill. Council Presidents Reg'l Hous. Auth. v. Mael*, 507 P.3d 963, 980 (Alaska 2022) (concluding that any evidentiary error was harmless because "[t]he jury was exposed to the same information in unobjectionable ways").