**Brandywyn McELROY, Appellant,**

v.

**Albert KENNEDY, Appellee.**

No. S–10380.

Supreme Court of Alaska.

Aug. 1, 2003.

Gloria Hanssen Hooper, Fairbanks, for Appellant.

No appearance for Appellee.

Before: FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Albert Kennedy sued Brandywyn ("Bryn") McElroy for return of child support that he had paid. He lost the case. In a second lawsuit, Kennedy obtained a judgment against McElroy that required her to return child support she had received from Kennedy. McElroy challenges the denial of her motion to dismiss the second lawsuit. Because we agree with McElroy that *res judicata* should have acted as a bar to relitigation of the restitution issue, we reverse the superior court's denial of her motion to dismiss. It is therefore unnecessary to reach the superior court's decision to grant summary judgment in favor of Kennedy.

## II. FACTS AND PROCEEDINGS

Albert Kennedy and Bryn McElroy began dating in high school and maintained a romantic relationship for several years, but

never married. During the summer of 1994, the couple briefly split, and McElroy engaged in sexual relations with another man, Terry Knear. In August or September of 1994 the couple resumed their relationship. McElroy gave birth to a son, Leon, on July 27, 1995. Kennedy signed papers at the hospital acknowledging his paternity of Leon, and he was subsequently listed on Leon's birth certificate as his father.

The couple separated in 1998, and apparently maintained some form of informal joint custody until March of 2000 when McElroy filed a complaint for child custody with the superior court in Fairbanks, in Case No. 4FA–00–587 Civil. She asked the court to award joint legal custody and to grant her child support. In his answer, Kennedy admitted he was Leon's father, agreed that the parties should share legal custody and counterclaimed for primary physical custody. While Kennedy and McElroy awaited the court's order, the Child Support Enforcement Division (CSED) issued a child support order against Kennedy on April 26, 2000, requiring him to pay McElroy $404 per month effective June 1, 2000 and $9,262 in back child support for the time between July 1998 and May 2000. Kennedy did not contest either the amount of support or the finding of paternity. He paid the ordered amounts on May 25. On July 24, 2000 Superior Court Judge Niesje J. Steinkruger granted McElroy's motion for temporary shared custody, establishing an approximate 43/57 custody split and granting McElroy $93.81 per month in child support to be paid by Kennedy. The court made the support order effective February 1, 2000, so it covered six months of back support by the time it was issued. A trial date was set for October 23.

In the meantime, at the urging of Kennedy's current wife, Kennedy and Leon underwent voluntary paternity testing in June of 2000 without McElroy's knowledge. In July

Kennedy learned he was not Leon's biological father. Based on this information, Kennedy decided he no longer wanted to be a part of Leon's life. On August 9, 2000 Kennedy moved the court to legally disestablish his paternity, terminate his legal duty to support Leon, require McElroy to reimburse him for support paid between February and June 2000, direct CSED to cease collection efforts against him, and change Leon's last name from McElroy–Kennedy to McElroy. In the memorandum filed in support of his motion, Kennedy asked the court to vacate the temporary child custody and support order under Alaska Civil Rule 60(b)(5),[1] thereby providing him with prospective relief. He also asked for retrospective relief in the form of reimbursement of either all the financial support received by McElroy between February 1 and June 1, 2000, or the difference between the amount Kennedy was ordered to pay by the court ($93.81 per month) and the amount he was ordered to pay by CSED ($404 per month).[2]

McElroy did not object to Kennedy's motion to disestablish paternity, but she did challenge his claim for reimbursement of support. She argued that because Kennedy was Leon's legal father during the period of time in question, he was not entitled to reimbursement of child support payments made prior to the disestablishment of his paternity. After considering Kennedy's and McElroy's arguments regarding the equities in the case, Judge Steinkruger issued an Order Regarding Paternity and Support, granting Kennedy's motion in part, but rejecting his request for reimbursement from McElroy and refusing to set aside CSED's order because CSED was not a party to the case. In her dismissal order of September 5, 2000, Judge Steinkruger terminated Kennedy's future child support obligations pursuant to the temporary order she had issued, changed Leon's last name, and dismissed the action with prejudice.

---

1. Alaska Civil Rule 60(b)(5) provides for relief from a "final judgment, order, or proceeding" where "it is no longer equitable that the judgment should have prospective application[.]"

2. While the CSED award became effective on a monthly basis on June 1, 2000, the lump sum of

back support included the period between February 1 and June 1. Because Kennedy believed the superior court's judgment had modified CSED's order, he argued that he had overpaid child support during that time.

Rather than appealing Judge Steinkruger's decision, Kennedy moved for reconsideration, arguing that the superior court had overlooked or failed to consider an applicable statute in reaching its decision. Because his motion for reconsideration was late, Kennedy also filed a Motion to Accept Late Filing of Motion for Reconsideration, arguing that overlooking the relevant statute constituted good cause for the late filing. The court determined that this did not constitute good cause, and denied the motion without prejudice, instructing Kennedy that he could refile with good cause shown. He did not do so, nor did he appeal.

On November 16, 2000 Kennedy instituted a new case, No. 4FA–00–2578 Civil. Naming both McElroy and CSED as defendants, he sought to vacate the CSED administrative order of child support and obtain restitution of all of the child support he had already paid. The case was assigned to Superior Court Judge Ralph R. Beistline. In the complaint, styled as a "Petition," Kennedy cited the "newly discovered evidence of Mr. Kennedy's non-paternity [which] now makes it apparent that CSED's judgment was obtained by the fraud, misrepresentation or other misconduct of Bryn McElroy, or by mistake, inadvertence, surprise or excusable neglect on the matter of Mr. Kennedy's paternity." McElroy answered in January 2001, asserting the affirmative defenses of res judicata and/or collateral estoppel, laches, waiver, and failure to state a claim upon which relief may be granted. In February she filed a motion to dismiss on res judicata grounds. Judge Beistline summarily denied McElroy's motion to dismiss in March. Kennedy then moved for summary judgment and his motion was granted on September 17.

McElroy appeals the trial court's denial of her motion to dismiss and its granting of summary judgment to Kennedy.[3] Kennedy has not appeared.

## III. STANDARD OF REVIEW

We review a motion to dismiss de novo.[4] The question whether res judicata or collateral estoppel applies is a question of law, which we also review de novo.[5]

## IV. DISCUSSION

### The Superior Court Erred in Denying McElroy's Motion To Dismiss Action as Res Judicata.

Judge Beistline summarily denied McElroy's motion to dismiss Kennedy's petition. McElroy argues that Judge Steinkruger's decision in her Order Regarding Paternity and Support should have operated as a bar to Kennedy's petition for restitution of child support on any basis. Kennedy has failed to file a brief in this appeal, but in his Memorandum in Support of Opposition to Motion to Dismiss Action as Res Judicata filed with the superior court, he argued that the second action was proper because he was asserting an independent justification for reimbursement of child support, he was directly attacking the final child support order for the first time, and he had added a second party to the action.

"Res judicata consists of both claim preclusion and issue preclusion."[6] Claim preclusion "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party ... and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action."[7] We have held that "a final judgment

---

3. Because we reverse the superior court's denial of McElroy's motion to dismiss, we do not reach the superior court's decision to grant summary judgment to Kennedy.

4. *Nunez v. Am. Seafoods*, 52 P.3d 720, 721 (Alaska 2002).

5. *Rapoport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 951 (Alaska 1990); *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

6. *Dixon v. Pouncy*, 979 P.2d 520, 523 (Alaska 1999).

7. *Id.* (quoting Moore's Federal Practice § 131.10[1][a] (3d ed.1997) (alteration in original)). *See also* Restatement (Second) of Judgments § 24(1) (1982) (expansively defining claim extinguished by valid and final judgment on merits as including "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose").

in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[8]

 Whereas claim preclusion bars the litigation of any cause of action arising out of a claim which has already been litigated, issue preclusion, or collateral estoppel, renders an issue of fact or law which has already been decided by a court of competent jurisdiction conclusive in a subsequent action between the same parties, whether on the same or a different claim.[9] To determine whether issue preclusion applies, we ask whether:

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action;

(2) the issue precluded from relitigation is identical to the issue decided in the first action;

(3) the issue was resolved in the first action by a final judgment on the merits; and

(4) the determination of the issue was essential to the final judgment.[10]

Because we hold that Kennedy's second action against McElroy is barred by claim preclusion, we need not reach McElroy's argument regarding issue preclusion.

### 1. Final Judgment on the Merits

 There is no dispute that Judge Steinkruger's Order Regarding Paternity and Support and Order of Dismissal operated as a final judgment on the merits. Following briefing by the parties, Judge Steinkruger disestablished Kennedy's paternity, ordered his name removed from Leon's birth certificate, and legally changed Leon's last name to McElroy. In addition, Judge Steinkruger rejected Kennedy's request for reimburse-

ment of child support in the amount of $1,429.91, declined to order CSED to cease child support collection efforts against Kennedy since CSED had not been named as a party to the action, and denied Kennedy's request for appointment of a guardian *ad litem* to protect Leon's interests. In the accompanying Order of Dismissal, Judge Steinkruger dismissed the action with prejudice and vacated the scheduled trial and pretrial conference. There is no question that these actions constituted a final judgment on the merits.

### 2. Court of Competent Jurisdiction

Similarly, there is no question that the superior court is a court of competent jurisdiction.

### 3. Same Parties and Same Cause of Action

The same parties were indisputably involved in both actions. While it is true that Kennedy added CSED as a defendant in the case seeking to vacate CSED's administrative order of child support and for restitution of child support, the mere addition of a second party does not change the fact that both McElroy and Kennedy were parties to the first action and both were bound by its results. And while Kennedy was required to sue CSED to prospectively prevent collection of child support from him,[11] he could and did request reimbursement of child support paid to McElroy pursuant to CSED's order in the context of the first proceeding. Adding CSED as a party does not lessen the *res judicata* effect of Judge Steinkruger's decision.

With respect to the "same cause of action" requirement, we employ a transactional analysis to determine what constitutes a cause of action barred from relitigation by *res judica-*

---

8. *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997) (citing *Blake v. Gilbert*, 702 P.2d 631, 634–35 (Alaska 1985), *overruled on other grounds by Palmer v. State*, 770 P.2d 296 (Alaska 1989)).

9. Restatement (Second) of Judgments § 27 (1982).

10. *Renwick v. State, Bd. of Marine Pilots*, 971 P.2d 631, 634 (Alaska 1999).

11. While Kennedy asked Judge Steinkruger to order CSED to cease child support collection efforts against him, she declined to do so because CSED was not named as a party to the first action. Instead, Judge Steinkruger instructed Kennedy to independently seek relief in his administrative case.

*ta.*[12] As explained in § 24(2) of the RESTATE-MENT (SECOND) OF JUDGMENTS (1982),

> [w]hat factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.[13]

Where more than one claim arises from the same transaction or series of transactions, they must all be prosecuted in a single legal action or be lost.

In the action before Judge Steinkruger, Kennedy asked for partial restitution, either for the amount of child support paid for the period between February and June 2001 pursuant to the CSED order, or for the difference between the amount required by the CSED order and Judge Steinkruger's Order Granting Motion for Temporary Shared Custody. While Kennedy did not explicitly state the basis for this request for restitution, he seems to have been arguing that such reimbursement would be equitable given the fact that he was found not to be Leon's biological father. As Kennedy explained:

> CSED calculated Mr. Kennedy's child support obligation at $404 per month and based his arrears on this amount. Between February 1 and June 1, 2000, the plaintiff received $2,020 in child support. Because the paternity test shows that Mr. Kennedy is not the child's father, the plaintiff should reimburse Mr. Kennedy this entire amount.

> If the court will not order the plaintiff to reimburse Mr. Kennedy all of the child support she received between February 1 and June 1, she should reimburse Mr. Kennedy the difference between the

amount he was ordered to pay by this court ($93.81 per month) and the amount he actually paid ($404 per month).

While Kennedy did not explicitly raise fraud as a basis for restitution in his motion to disestablish paternity, he did intimate in his reply brief that it was a factor in his decision to seek restitution.[14]

In the second action, before Judge Beistline, Kennedy asked for restitution of all child support paid pursuant to CSED's retroactive order on the ground that he was asserting "an independent justification for reimbursement of child support, namely that McElroy defrauded him and misrepresented that he was the child's father." He referred to the basis of his second complaint as "newly discovered evidence of Mr. Kennedy's nonpaternity." While this evidence may have been discovered after the entry of the support order against him, Kennedy was well aware of that evidence as well as the alleged fraud and misrepresentation at the time he litigated his motion to disestablish paternity in Judge Steinkruger's court.

Both of these actions were therefore based on the same underlying facts and transactions. As McElroy notes:

> The facts at the basis of both claims are closely related, indeed identical, in 'time, space, origin, and motivation and form a convenient trial unit'. The precise facts, evidence and witnesses which would have been necessary to a trial in the first case (had Albert requested a hearing on his claim for partial reimbursement of child support) are required in the restitution case.

While Kennedy did not explicitly accuse McElroy of fraud in the context of the first action, his allegations in the second proceeding were based on information available to him at the time the first action was filed.

---

12. *Plumber,* 936 P.2d at 167.

13. *See also White v. State, Dep't of Natural Res.,* 14 P.3d 956, 959–60 (Alaska 2000).

14. In his Reply to Memorandum of Qualified Non–Opposition to Motion to Disestablish Paternity and Opposition to Child Support Reimbursement filed before Judge Steinkruger, Kennedy maintained that "[h]ad the plaintiff been forth-

right and truthful five years ago, Mr. Kennedy would have pursued this matter much sooner...." He also stated that "[h]e had no firsthand knowledge of any intimate relationships that the plaintiff may have been involved with at the time Leon was conceived, and in fact, never questioned the plaintiff's word regarding this issue."

Our case law has made clear that where a party has had ample opportunity to litigate an issue, "the fact that he chose not to, whether 'because of a strategic decision or ignorance or other reason,' does not exempt him from the principles of *res judicata.*"[15] Because Kennedy could have pursued his claim of fraud or misrepresentation in the action before Judge Steinkruger but for whatever reason chose not to, he is barred by *res judicata* from doing so here.

Kennedy further argued that the second action was not barred by *res judicata* because he was challenging for the first time the validity of CSED's child support order. Kennedy found justification for this position in *Dixon v. Pouncy*,[16] in which the superior court rejected Irvin Dixon's attempt, upon finding out that he was not a child's biological father, to file a motion for relief from a divorce decree naming him the father of the child of the marriage.[17] The superior court reasoned that while the issue of paternity had not actually been litigated in the context of the divorce proceeding, it could have been, and therefore, Dixon was precluded from relitigating it at a later point in time.[18] We rejected that analysis, holding that because Dixon's motion constituted a direct attack on the divorce decree of the type specifically contemplated by Rule 60(b), it could not be barred by *res judicata.*[19]

Kennedy argued below that "[t]his case represents a direct attack on [the CSED] order that is being made now for the very first time. Mr. Kennedy has not previously sought to attack any order or decree on child support. The fact that he requested partial reimbursement of child support due to conflicting child support orders in no way represents a 60(b) motion or an attack on any order or judgment." This "direct attack"

argument does not lend any further support to Kennedy's claims against McElroy. McElroy has never challenged Kennedy's right to have CSED's order set aside under Rule 60(b). Her only objection has been to reimbursing child support already paid to her pursuant to that order. The validity of CSED's order was not properly before Judge Steinkruger because CSED was not named as a party to that action, and therefore the decision in the first action can have no preclusive effect as to CSED. However, whether McElroy must reimburse Kennedy for child support paid has already been decided. Any arguments Kennedy may have had with respect to that claim should have been brought during the pendency of the first action.

Whether Judge Steinkruger was correct in her decision in 4FA–00–587 is not before us at the present time. If Kennedy disagreed with the court's decision, he could have appealed it.[20] Instead he chose to file a second action in 4FA–00–2578 asserting claims based on the same set of facts and transactions Judge Steinkruger had already issued a ruling on. Because Kennedy could have raised the issues of fraud or misrepresentation in the first proceeding, *res judicata* bars him from doing so in the second.

## V. CONCLUSION

*Res judicata* bars any causes of action related to restitution, which could have been decided by Judge Steinkruger in 4FA–00–587, from being raised in the new action, 4FA–00–2578, before Judge Beistline. Accordingly, we REVERSE the denial in 4FA–00–2578 by Judge Beistline of McElroy's motion to dismiss on *res judicata* grounds. We

---

**15.** *White,* 14 P.3d at 961–62 (quoting *Plumber,* 936 P.2d at 168).

**16.** 979 P.2d 520 (Alaska 1999).

**17.** *Id.* at 522.

**18.** *Id.* at 522–23.

**19.** *Id.* at 524.

**20.** Kennedy's motion for reconsideration was brought within the time for appeal. As such, he could have appealed Judge Steinkruger's deci-

sion rather than requesting reconsideration. Additionally, Kennedy could have appealed the denial of his motion for reconsideration. Finally, Kennedy could have brought a motion to set aside Judge Steinkruger's order under Civil Rule 60(b)(1) on the basis of mistake of law. We express no opinion on the question whether Kennedy may still seek relief on Rule 60(b) grounds in 4FA–00–587 or on the merits of the underlying claim.

REMAND with instructions to DISMISS Kennedy's case.

EASTAUGH, Justice, not participating.