*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GIRDWOOD MINING COMPANY, | ) | |
| | ) | Supreme Court Nos. S-14588/15037 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court No. 3AN-10-11956 CI |
| | ) | |
| COMSULT LLC and RODGER DAVIS, | ) | O P I N I O N |
| | ) | |
| | ) | No. 6921 – July 3, 2014 |
| Appellees. | ) | |
| | ) | |
| | ) | |
| COMSULT LLC and RODGER DAVIS, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GIRDWOOD MINING COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: William D. Artus, Anchorage, for Appellant/Appellee Girdwood Mining Company. Michael R. Mills and Katherine E. Demarest, Dorsey & Whitney LLP, Anchorage, for Appellees/Appellants Comsult LLC and Rodger Davis.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

A mining company contracted with a consultant to help the company obtain new capital investments. The company later brought suit against the consultant, seeking declaratory judgment that the contract violated Alaska securities law, as well as equitable rescission of the contract and cancellation of shares of stock and royalty interests granted under the contract. The superior court granted summary judgment to the consultant on two grounds: (1) the company's suit was barred as a matter of law by AS 45.55.930(g), which provides that "[a] person who makes or engages in the performance of a contract in violation of [Alaska's securities law] . . . may not base a suit on the contract"; and (2) the company's suit was barred as a matter of law by res judicata in light of a prior suit instituted by the consultant against the company in which the company did not raise its present claims defensively. We reverse the superior court's grant of summary judgment on both grounds.

## II.    FACTS AND PROCEEDINGS

Girdwood Mining Company and Comsult LLC, a consulting company, entered into two agreements in August 2003:  a Management Agreement and a Fundraising Agreement. Under the Management Agreement, Comsult would provide management services for Girdwood Mining and in return would receive a retainer in the form of a grant of stock plus regular cash payments. Under the Fundraising Agreement, Comsult would bring new capital investment to Girdwood Mining and in return would receive royalty interests and stock. For purposes of argument on the summary judgment motion practice in the superior court and in this appeal, the parties have assumed that the

Fundraising Agreement violated Alaska securities law in order to reach the other legal issues presented in this case. Comsult has reserved the ability to argue in any further proceedings that the Fundraising Agreement did not violate Alaska securities law. We therefore do not address that substantive issue in this appeal.

After the business relationship between Girdwood Mining and Comsult soured, the parties executed a Memorandum of Understanding in July 2004 terminating both prior agreements. Under the Memorandum, Girdwood Mining was to compensate Comsult for its performance under the Management Agreement by issuing a promissory note, and Girdwood Mining was to compensate Comsult for its performance under the Fundraising Agreement by awarding Comsult 60,000 shares of stock and a one-percent precious-metals royalty. In October 2007 Comsult sued Girdwood Mining, seeking payment on the unpaid promissory note, and Girdwood Mining confessed judgment in February 2008. Girdwood Mining did not argue as a defense to that suit that any of the agreements between Girdwood Mining and Comsult were illegal and unenforceable.

The current case began in November 2009 when Girdwood Mining sued Comsult[1] seeking to cancel Comsult's stock and royalty interests that compensated Comsult for the termination of the Fundraising Agreement under the Memorandum. Girdwood Mining argued that the relevant portions of the agreements are illegal under Alaska securities law and that they are therefore void and the interests granted thereunder are subject to rescission on equitable grounds.

The superior court granted summary judgment to Comsult on two grounds. The superior court held that AS 45.55.930(g), which provides that "[a] person who makes or engages in the performance of a contract in violation of [Alaska's securities

---

[1]      Girdwood Mining also listed as a defendant Rodger Davis, the primary owner and manager of Comsult at the time. For simplicity, this opinion refers to the defendants together as Comsult.

law] . . . may not base a suit on the contract," barred suit by Girdwood Mining in this case. The superior court also held that Girdwood Mining's claims in this case were barred by res judicata in light of Girdwood Mining's failure to raise similar counterclaims or defenses in Comsult's suit against Girdwood Mining in 2007 and 2008. Girdwood Mining appeals the superior court's grant of summary judgment on both grounds.[2]

## III.   STANDARD OF REVIEW

"We review rulings on motions for summary judgment de novo, 'reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor.' A party is entitled to summary judgment only if there is no genuine issue of material fact and if the party is entitled to judgment as a matter of law."[3]

Whether Comsult was entitled to judgment as a matter of law in this case depends on our legal interpretation of a statute, AS 45.55.930(g), and on our legal determination whether Girdwood Mining's claims in this case were barred by res judicata in light of Comsult's 2007 lawsuit. We review de novo a superior court's interpretation of a statute[4] and its determination that a claim is barred by res judicata.[5]

---

[2]    Because we reverse the superior court's grant of summary judgment, we need not address the other two issues presented for appeal: whether Girdwood Mining's rejection of a settlement offer by Comsult merited enhanced attorney's fees under Alaska Civil Rule 68, and whether the superior court erred by denying Comsult's motion to enforce Comsult's stock and royalty interests after Girdwood Mining decided to refuse to honor those interests unilaterally following its loss at summary judgment.

[3]    *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (citations omitted).

[4]    *Cragle v. Gray*, 206 P.3d 446, 449 (Alaska 2009).

[5]    *Patrawke v. Liebes*, 285 P.3d 268, 271 n.7 (Alaska 2012).

"When applying the de novo standard of review, we apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

### A. Girdwood Mining's Suit Is Not Barred By AS 45.55.930(g).

Alaska Statute 45.55.930(g) provides that "[a] person who makes or engages in the performance of a contract in violation of a provision of [the state securities laws] . . . or who acquires a purported right under the contract with knowledge of the facts by reason of which its making or performance is in violation, may not base a suit on the contract."

Girdwood Mining, an issuer of securities, sued its former consultant, Comsult, seeking a declaratory judgment that the consulting contract was illegal under Alaska securities law and seeking equitable rescission and cancellation of compensation under that contract on those grounds. The superior court granted summary judgment to Comsult, holding that "the plain language" of AS 45.55.930(g) requires the conclusion that Girdwood Mining is barred from bringing this claim because the claim "is based on the contention that the [contract] violates Alaska's securities laws" and "is, therefore[,] 'base[d] . . . on the contract[s].' "[7] The scope of AS 45.55.930(g)'s base-no-suit provision is an issue of first impression in Alaska.

We conclude that it was error for the superior court to rule that Girdwood Mining's suit was barred under AS 45.55.930(g) as a suit "base[d]" on an illegal contract. As a matter of textual interpretation, to "base" a suit on a contract is to seek to

---

[6] *ConocoPhillips*, 322 P.3d at 122 (citation omitted) (internal quotation marks omitted).

[7] Third and fourth alterations in original.

vindicate legal rights established by the contract. In other words, to base a suit on a contract is to seek relief on the basis of the contract's validity.[8] By contrast, a suit seeking to invalidate a contract as illegal and rescind compensation granted under the contract is not "base[d]" on the contract; it is based on the common law rules governing illegal contracts and remedies. A suit seeking to invalidate a contract seeks to vindicate legal rights established by the common law, not the illegal contract. More generally, the basis of any lawsuit, or that on which the suit ultimately rests,[9] is the source of law that creates the plaintiff's cause of action by establishing legal rights that might be vindicated in court if abridged. Accordingly, AS 45.55.930(g)'s base-no-suit provision bars lawsuits that seek to *enforce* the terms of a contract that is illegal under Alaska's securities law; it does not bar lawsuits that seek relief on the premise that a contract is illegal, and therefore *unenforceable*, under Alaska's securities law.

To be sure, a suit to invalidate an illegal contract requires the court to interpret the contract in order to determine its illegality before applying the extra-contractual principles governing the validity of illegal contracts and the availability of remedies. Comsult would have us hold that any suit that involves interpreting a contract is "base[d]" on the contract. But that rule would sweep too far. It would make virtually any cross-reference in a claim the "basis" of the lawsuit. We conclude that the basis of

---

[8] *Insight Assets, Inc. v. Farias*, 321 P.3d 1021, 1027 (Utah 2013) ("[A]n action is 'based upon' a contract under the statute if a party to the litigation assert[s] the writing's enforceability as basis for recovery." (alterations in original) (quoting *Hooban v. Unicity Int'l, Inc.*, 285 P.3d 766, 770 (Utah 2012) (internal quotation marks omitted)).

[9] WEBSTER'S NEW INTERNATIONAL DICTIONARY 225 (2d ed. 1960) (defining the verb "base" as "[t]o put on a base or basis; to found; to establish, as an argument or conclusion; — used with *on* or *upon*" (italics in original)); *see also* BLACK'S LAW DICTIONARY 137 (5th ed. 1979) (defining the noun "base" to include the "[b]ottom, foundation, groundwork, that on which a thing rests").

a lawsuit is the source of law establishing the right one seeks to vindicate by instituting the suit.[10]

Our holding is consistent with cases from the very few jurisdictions that have previously addressed this question. Most cases interpreting a base-no-suit provision of a securities statute involve a party suing to *enforce* the terms of the illegal contract against another party to the contract; because suits to enforce rights created by contract are "base[d]" on the contract, courts uniformly hold such suits to be barred by the base-no-suit provisions of the securities statutes.[11] Few cases involve a party suing to declare a contract illegal under securities law or to seek rescission of compensation paid under an illegal contract.[12]

But some courts have held that such suits are not barred by the securities statute. For example, in *Novelos Therapeutics, Inc. v. Kenmare Capital Partners, Ltd.*,[13] a corporation that had contracted with a consultant to assist the corporation in marketing

---

[10] For this reason, we reject the conclusion of the federal bankruptcy court in *In re Bonham*, 229 B.R. 438 (Bankr. D. Alaska 1999), that AS 45.55.930(g) bars suits that "refer to the specific contractual terms" of a contract that is illegal under the Alaska securities law because such suits are "based" on the illegal contract, *id.* at 443. The court's cursory analysis is an implausibly broad interpretation of the phrase "to base on."

[11] *See, e.g.*, *Sec. Am., Inc. v. Rogers*, 850 So. 2d 1252, 1258 (Ala. 2002); *Indus Partners, LLC v. Intelligroup, Inc.*, 934 N.E.2d 264, 265-66 (Mass. App. 2010); *see also S & D Trading Acad., LLC v. AAFIS Inc.*, 336 F. App'x 443, 446-50 (5th Cir. 2009) (applying Texas securities law); *Sea Carriers Corp. v. Empire Programs, Inc.*, 488 F. Supp. 2d 375, 383-84 (S.D.N.Y. 2007) (applying Connecticut securities law); *Salamon v. CirTran Corp.*, No. 2:03-CV-787-75, 2005 WL 3132343, at *3 (D. Utah Nov. 22, 2005) (applying Utah securities law).

[12] It is perhaps more common for parties to an illegal contract to simply cease performance under the contract and raise the defense of illegality if the other party to the contract sues to enforce its terms.

[13] No. CIV. A. 00-1086, 2001 WL 893449 (Mass. Super. June 29, 2001).

securities later sought declaratory judgment that the contract was void for illegality under the state securities law and that no compensation was due under the contract.[14] The consultant counterclaimed for breach of the consulting contract and sought to enforce the contract,[15] but the court held the consultant's counterclaim to be barred by the base-no-suit provision of the state securities law and granted the corporation its declaratory judgment.[16]

A second case is also instructive. In *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*,[17] the Fifth Circuit held that an issuer of securities could sue its consultant under Section 29(b) of the federal Securities Exchange Act to void a consulting contract that violated the federal securities laws.[18] This case does not speak as directly to the meaning of what it is to "base" a suit on a contract as does *Novelos* because the federal statute is distinct from the state base-no-suit prohibition. Section 29(b) states: "Every contract made in violation of [the federal securities laws] . . . and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of [the federal securities laws] . . . shall be void . . . as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract."[19] Despite the differences between

---

[14]    *Id.* at *1-3, 7.

[15]    *Id.* at *7.

[16]    *Id.* at *8-10.

[17]    678 F.2d 552 (5th Cir. 1982).

[18]    *Id.* at 564.

[19]    15 U.S.C. § 78cc(b) (2012).

Section 29(b) and AS 45.55.930(g), *Regional Properties* supports the conclusion that a suit to declare the contract in this case illegal is not barred by statute because of the historical ties between the federal statute and the state statutes that it spawned: State courts often cite the federal statute and cases interpreting it for guidance in construing their securities acts.[20]

No case identified by us or by the parties from any sister jurisdiction interprets a similar base-no-suit provision of a state or federal securities statute to bar suit when an issuer of securities sues its own consultant to invalidate an illegal contract.

Our holding is also consistent with the legislative intent behind the Alaska securities statute.[21] Alaska modeled its base-no-suit provision on the Uniform Securities Act of 1956, § 410(f).[22] The official commentary to the 2002 revision of that Uniform Act (which left untouched the base-no-suit provision) states that "[the base-no-suit provision] . . . is intended to apply only to actions to *enforce* illegal contracts."[23]

---

[20]     *See, e.g.*, *Indus Partners, LLC v. Intelligroup, Inc.*, 934 N.E.2d 264, 271 (Mass. App. 2010).

[21]     Post-enactment legislative history is disfavored because "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). But, as here, it can provide confirmation of past or current legislative preferences. *See* EINER ELHAUGE, STATUTORY DEFAULT RULES: HOW TO INTERPRET UNCLEAR LEGISLATION 117 (2008).

[22]     *Compare* Uniform Securities Act of 1956, § 410(f), *with* ch. 198, § 310(f) SLA 1959 (enacting a strikingly similar base-no-suit provision that is codified today as AS 45.55.930(g)).

[23]     Uniform Securities Act of 2002, § 509(k) cmt. 15 (emphasis added).

And our holding interprets the base-no-suit provision so that the statute enacts a reasonable policy:[24] Just as issuers of securities may elect to defend against suits seeking to enforce a contract by raising illegality under AS 45.55.930(g), so too may they affirmatively seek declaratory judgment as to illegality. This parallelism was one reason behind the recognition at common law of a cause of action to cancel an illegal contract.[25] And to hold that Girdwood Mining's suit is barred by AS 45.55.930(g) would force a would-be plaintiff to forgo any judicial remedy and simply breach.[26] By contrast, our holding permits orderly unwinding of contractual relationships without surprise nonperformance and provides an additional route for reducing legal uncertainty.

Finally, Comsult argues that Girdwood Mining cannot possibly "recover" compensation already "paid" under the contract. But Comsult conflates this issue — whether Girdwood Mining will ultimately prevail in its claims under the law of remedies and equitable considerations — with the preliminary issue before us today: whether this suit is barred for being "base[d]" on an illegal contract. Because it is unnecessary for us to do so at this stage in litigation, we decline to address the merits of Girdwood Mining's claims.

---

[24]    When deciding questions of law, such as interpreting the meaning of a statute, we have repeatedly stated that "[o]ur duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979); *see also, e.g.*, *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72-73 (Alaska 2013).

[25]    *See Beit v. Beit*, 63 A.2d 161, 163 (Conn. 1948).

[26]    This is exactly what seems to have happened in this case. Girdwood Mining first brought suit as a plaintiff to invalidate the allegedly illegal contract through a regular and open process superintended by the superior court. But after the superior court granted summary judgment to Comsult on the ground that such a suit was barred by AS 45.55.930(g), Girdwood Mining decided to unilaterally cease to honor the royalty and stock interests granted under the Memorandum of Understanding.

**B.    Girdwood Mining's Claims In This Case Are Not Barred By Res Judicata**.

The doctrine of res judicata, or claim preclusion, "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party . . . and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action."[27]  In order for a claim to be barred by res judicata, there must have been "(1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[28]

In its most common configuration, res judicata is invoked to bar claims by a plaintiff who has already litigated those same claims as a plaintiff in a prior case.[29]  But claim preclusion has a wider sweep than that.  For instance, res judicata can sometimes bar the plaintiff's claim in a second case where that plaintiff was a defendant in an earlier case and could have but failed to interpose the same counterclaim or defense in the first case.[30]  Even in this defensive configuration, a claim will be precluded only if all three requirements above are met, including the requirement that the dispute be about "the same cause of action."

---

[27]    *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003) (omission in original) (quoting *Dixon v. Pouncy*, 979 P.2d 520, 523 (Alaska 1999)) (internal quotation marks omitted).

[28]    *Id.*

[29]    *See, e.g.*, RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982) (defining claim preclusion in terms of plaintiffs and defendants without considering the possibility of a defendant in case one becoming a plaintiff in case two).

[30]    *See Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1251-53 (Alaska 2001).

To determine whether two claims are "the same cause of action," we use a transactional analysis, looking at similarities in underlying facts rather than similarities in the legal claims.[31] We have cited with approval[32] the Restatement (Second) of Judgments § 24(1), which establishes an expansive scope for res judicata that "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."[33] Whether a factual grouping constitutes a transaction is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[34]

The two parties in the current case have faced each other in court before. Girdwood Mining and Comsult entered into two agreements: a Management Agreement and a Fundraising Agreement. The parties executed a Memorandum of Understanding terminating both prior agreements. Under the Memorandum, Girdwood Mining was to compensate Comsult for its performance under the Management Agreement by issuing a promissory note, and Girdwood Mining was to compensate Comsult for its

---

[31] *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010) ("The question of whether the cause of action is the same does not rest on the legal theory asserted but rather on whether the claims arise out of the same transaction — the same set of underlying facts."); *McElroy*, 74 P.3d at 906 ("With respect to the 'same cause of action' requirement, we employ a transactional analysis to determine what constitutes a cause of action barred from relitigation by *res judicata*." (italics in original)).

[32] *McElroy*, 74 P.3d at 906 n.7.

[33] RESTATEMENT (SECOND) OF JUDGMENTS § 24(1).

[34] *McElroy*, 74 P.3d at 908 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).

performance under the Fundraising Agreement by awarding Comsult stock and a royalty interest. In October 2007 Comsult sued Girdwood Mining for payment on the promissory note, and Girdwood Mining confessed judgment in February 2008. Girdwood Mining did not raise a defense of illegality in that earlier case. In the current case, instituted in 2009, Girdwood Mining sued Comsult to cancel Comsult's stock and royalty interests that compensated Comsult for the termination of the Fundraising Agreement under the Memorandum, arguing that the relevant portions of the agreements are illegal under Alaska securities law.

The superior court granted summary judgment to Comsult, concluding that Girdwood Mining's claim in this case is barred by res judicata in light of the 2007 lawsuit in which Girdwood Mining never raised its claim of illegality defensively when it confessed judgment in 2008. The superior court concluded that the confession of judgment was a final judgment from a court of competent jurisdiction and involved the same parties as the parties to the present litigation; the only remaining issue was "whether the prior litigation and the instant case arose out of the same transaction or series of connected transactions." The superior court concluded that both cases "were based on Comsult attempting to collect or protect what it was owed under the [Memorandum of Understanding]," which "was a complete settlement of both the Fundraising and Management Agreements," and that Girdwood Mining "could have challenged the validity of the [Memorandum of Understanding] and the underlying Fundraising Agreement during the prior litigation."

Comsult defends the superior court's grant of summary judgment and argues that Girdwood Mining's claims in this case are "inextricably linked" to the 2007 lawsuit because both arose out of the Memorandum of Understanding. It further argues that allowing Girdwood Mining to proceed with its claims in this case would impair its rights established in the 2008 confession of judgment. Girdwood Mining argues that its

current suit and the 2008 confession of judgment are "at best" only slightly related insofar as one of the promissory notes at issue in 2008 was referenced in the Memorandum of Understanding and that its current claim seeks to cancel another part of the Memorandum of Understanding.

We conclude that it was error for the superior court to conclude that Girdwood Mining's claims in this case are barred by res judicata. The facts underlying Girdwood Mining's claims in this case are not so closely related to the facts underlying its foregone defenses or counterclaims in the 2007 case as to constitute the "same cause of action" under our transactional test. The two suits involve almost entirely separate facts relating to separate deals. The promissory note at issue in 2007 was for compensation due for Comsult's performance under the Management Agreement, whereby Comsult agreed to provide certain management services for Girdwood Mining. Those management services did not involve fundraising, and neither party has suggested that the Management Agreement was illegal under Alaska securities law.

The stock and royalty interests at issue in the present case were compensation due for Comsult's performance under the Fundraising Agreement, in which Comsult agreed to raise money for Girdwood Mining. It is those services that are assumed for the purposes of argument in this appeal to have been illegal. The key underlying facts in the two cases are different and involve disputes about different consideration for different services. Comsult has never argued that the promissory note (consideration for termination of the Management Agreement) and the stock and royalty interests (consideration for termination of the Fundraising Agreement) were linked and that settlement of both agreements was a precondition to termination of any individual agreement. Because the transactional facts are so distinct between the 2007 suit and the present case, Girdwood Mining's claims are not precluded.

Moreover, the specific contracts at issue in the present case and the 2007 case are independent instruments. Comsult's claim in 2007 was not that Girdwood Mining had breached the Memorandum of Understanding but rather that Girdwood Mining owed Comsult money under the individual promissory notes. According to the Restatement (Second) of Judgments, "judgment can be obtained on any one or a number of [independent instruments] without affecting the right to maintain an action on the others."[35]

The only shared fact between the two cases is that both the Management Agreement and the Fundraising Agreement were terminated by the Memorandum of Understanding, which prescribed independent forms of compensation for performance under the separate prior agreements. We conclude that this lone shared fact is not sufficient to trigger the doctrine of claim preclusion in this case, when the other transactional facts underlying the two cases are otherwise so distinct. Finality and judicial efficiency are the primary objectives of the doctrine of res judicata.[36] To require Girdwood Mining to have brought its present claims defensively in 2007 would not advance the interest of judicial efficiency. Rather, it would harm the important interest of preserving a litigant's freedom of action and unfairly require Girdwood Mining "to assert [its] claim in the forum or proceeding chosen by the plaintiff . . . [rather than] allow[] [it] to bring suit at a time and place of [its] own selection."[37]

---

[35] RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. d.

[36] *Kent V. v. State, Dep't of Health & Soc. Servs.*, 233 P.3d 597, 600-01 (Alaska 2010).

[37] *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1251 (Alaska 2001) (internal quotation marks and citation omitted).

## V.    CONCLUSION

For these reasons, we REVERSE the superior court's grant of summary judgment to Comsult and REMAND for further proceedings consistent with this opinion.